## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into between JAMES BERMAN, TRUSTEE (the "Trustee) OF THE ESTATES OF MICHAEL S. GOLDBERG and MICHAEL S. GOLDBERG, LLC (collectively the "Debtors") and RICHARD and DIANE MUSCATELLO (collectively "Muscatellos") as of the Effective Date shown below:

**WHEREAS**, over the last twelve years, Michael S. Goldberg ("Goldberg") and his single member limited liability company, Michael S. Goldberg, LLC ("Debtor LLC"), operated a Ponzi scheme (the "Goldberg Scheme")[1]; and

**WHEREAS**, the Goldberg Scheme promised (and for a long time, paid) unrealistic and unbelievable rates of return of up to (and in some cases, exceeding) twenty percent (20%) per quarter, in purportedly risk-free investments involving either the purchase and resale of diamonds ("Diamond Deals") and the purchase of foreclosed business assets (such as structural steel, aluminum and other construction material) from Chase Manhattan Bank at prices supposedly low enough to allow Goldberg to resell those assets (usually within ninety (90) days of purchase) to large institutions at profit margins of up to one hundred (100%) percent (the "Chase Asset Deals").

---

[1] A Ponzi scheme is a fraudulent pyramid-type scheme named after Charles Ponzi. Cunningham v. Brown, 265 U.S. 1 (1924).In such a scheme, money from new investors is used to pay artificially high returns to earlier investors in order to create an appearance of profitability and attract new investors so as to perpetuate the scheme. See Bear Stearns Servs. Corp. v. Gredd., 397 B.R. 1, 8-10 (S.D.N.Y. 2007) (citing Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1088 n. 3 (2d Cir. 1995)); see, also In re: Unified Commercial Capital Inc. 260 B.R. 343 (Bankr. W.D.N.Y. 2001) ("A Ponzi scheme, as that term is generally used, refers to an investment scheme in which returns to investors are not financed through the success of the underlying business venture, but are taken from principal sums of newly attracted investments. Typically, investors are promised larger returns for their investments. Initial investors are actually paid the promised returns, which attracts additional investors."). There is a general rule - known as the "Ponzi scheme presumption" - that such a scheme demonstrates fraudulent intent as matter of law because "transfers made in the course of a Ponzi scheme could have been made for no purpose other than to hinder, delay or defraud creditors." Bear Stearns v. Gredd., at 8-10. See also Donnell v. Kowell, 533 F.2d 462, 770 (9th Cir. 2008), cert. den. 129 S.Ct. 640 (2008); SEC v. Resource Dev. Int'l, LLC, 487 F.3d 295, 304 (5th Cir. 2007); Armstrong v. Collins, 2010 Bankr. LEXIS 280 75*63 (S.D.N.Y. 2010).

**WHEREAS**, many (but not all) of the investors in the Diamond Liquidation Deals and the Chase Asset Deals were expecting to receive an annualized rate of return of over one hundred (100%) percent on an after-tax basis, in virtually risk-free deals;

**WHEREAS**, hundreds of investors invested funds with the Debtors based on these high rates of return on risk-free deals;

**WHEREAS**, when major investors began demanding full payment on their investments, instead of "rolling them over," the Goldberg Scheme became more and more difficult to maintain. Goldberg began making later and later payments while he tried to find replacement investors so that he could pay off those investors who were demanding their money. This created increased concern among large investors who, for understandable reasons, feared the worst in terms of the bona fides of Goldberg's transactions. This caused those investors to put Goldberg under increasing pressure and scrutiny;

**WHEREAS**, ultimately, Goldberg was sued in the fall of 2009 and his assets were frozen by a group of large investors whose contracts with Goldberg were never paid. In November, 2009, Goldberg turned himself in to federal authorities. At about the same time, those investors who had sued Goldberg and LLC for fraud joined together to commence the involuntary bankruptcy which resulted in the Trustee's appointment, in which capacity he brings this action for the benefit of all creditors of the estate;

**WHEREAS**, on November 18, 2009 (the "Petition Date"), certain petitioning creditors filed an involuntary petition for relief under Chapter 7 of the Bankruptcy Code against each of the Debtors;

**WHEREAS**, on November 24, 2009, the Court entered the Order for Relief in the Debtors' cases (the "Bankruptcy Cases");

**WHEREAS**, by Orders dated January 11, 2010, the Court confirmed the election of James Berman as Chapter 7 Trustee in the Bankruptcy Cases;

**WHEREAS**, the Muscatellos invested certain funds in the Goldberg Scheme and received all of their investments plus a profit from the Goldberg Scheme as set forth on Exhibit A;

**WHEREAS**, the Muscatellos entered into written contracts with "Michael S. Goldberg representing Acquisitions Unlimited Group" for "Diamond Liquidation" using a one page Business Investment Agreement form attached hereto as Exhibit B;

**WHEREAS**, the Muscatellos' returns on the "Diamond Lot Liquidation" were to be 20% for a two month investment or an annual return of more than 120% per annum;

**WHEREAS**, based upon the extremely high and unrealistic rates of return, the Muscatellos suspected that the returns from the Goldberg Scheme were too good to be true;

**WHEREAS**, on September 22, 2009, the Muscatellos received a payment from the Debtor LLC in the amount of $18,000.00, Check No. 1745 (the "Preference Amount"), and said payment was within the ninety day preference period prior to Petition Date;

**WHEREAS**, as a result of the Goldberg Scheme, the Muscatellos received all of their original investment plus $26,000.00 in false "profit" (the "False Profits");

**WHEREAS**, there are no real profits in the Goldberg Scheme because the funds received from investors were never used for investment purposes and were used almost exclusively to pay off other investors as Mr. Goldberg has admitted to the Trustee and others;

**WHEREAS**, the Muscatellos have represented to the Trustee that they had no knowledge that the Goldberg Scheme was a Ponzi scheme until after Goldberg's arrest;

**WHEREAS**, the Muscatellos have represented to the Trustee that, before Goldberg's arrest, they were not aware of any facts which would indicate that the Goldberg Scheme was a Ponzi scheme other than the "too good to be true" rates of return paid by the Goldberg Scheme; and

**WHEREAS**, the Muscatellos have represented to the Trustee that they received no compensation from Goldberg or other investors in connection with the Goldberg Scheme, other than the amounts set forth on Exhibit A and that they have never received any payment or commission in return for persuading any other investor to invest in the Goldberg Scheme;

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements set forth herein, and based upon the accuracy and truth of the representations made by the Muscatellos to the Trustee, and with the intent to be legally bound, it is agreed between the undersigned as follows:

1. **Payment Terms**

The Muscatellos shall return $56,000.00 of the $126,000.00 which they received from the Goldberg Scheme (the "Returned Funds"). The Returned Funds shall be in the form of a bank or certified check payable to James Berman, Trustee of the Estate of Michael S. Goldberg, LLC. Payment of the Returned Funds shall be made within fourteen days of the Court's approval of this Settlement Agreement.

2. **Payment Basis**

The payment of the Returned Funds represents a payment of all of the Muscatellos' False Profits which includes all of the Preference Amounts plus a disbursement to the Estate of 30% of the Muscatellos' original investment in the Goldberg Scheme.

3. **Muscatello's Representations**

This Settlement is being entered into based upon the Muscatellos' express representations that: (1) they were never actually aware (despite their suspicions) that the Goldberg Scheme was a Ponzi scheme prior to the Petition Date; (2) they never received any payment or commission in return for persuading any other investor to invest in the Goldberg Scheme; (3) they received no compensation from the Goldberg Scheme, except as set forth on Exhibit A; and (4) that they had no knowledge concerning any fact which would have placed them on inquiry notice that the Goldberg Scheme was a Ponzi scheme, other than the outlandish rates of return paid under the Goldberg Scheme and his own sense that it was "too good to be true". If, at any time, these representations are determined by the Court, after notice and a hearing, to be materially false, the release set forth in Paragraph 4 shall be null and void.

### 4. Trustee's Release of the Muscatellos

In consideration of the payment of the Returned Funds, the Trustee, hereby expressly releases any and all claims that he may have against the Muscatellos, and their heirs, devisees and assigns ("Releasees") relating to their investment in the Goldberg Scheme, including any and all actions, causes of action, rights, claims, costs, liabilities, damages, losses, expenses, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, expenses, executions, compensation, or demands whatsoever against said Releasees, the Trustee ever had, now has or which he shall or may have in connection with the transactions set forth on Exhibit A.

### 5. Future Settlement Offers to Innocent Investors

In the event that the Trustee makes a blanket offer in the future to all investors similarly situated to the Muscatellos (i.e., to investors that had no actual knowledge that the Goldberg Scheme was a Ponzi scheme prior to the Petition Date; who did not receive any compensation for bringing

bringing any other investors into the Goldberg Scheme and who had no relationship with Goldberg other than their investments in the Goldberg Scheme ("Innocent Investors")), to accept less than all False Profits plus 30% of the Innocent Investors' capital investment back in return for a release, then the Muscatellos shall be entitled to the same terms as those offered to Innocent Investors by the Trustee. In the event that the Trustee makes an offer to Innocent Investors requiring a greater percentage disgorgement than paid by the Muscatellos or is ultimately able to recover from Innocent Investors more than their False Profits plus 30% of their capital investment in the Goldberg Scheme, Muscatello shall nevertheless <u>not</u> be required to pay any additional funds to the Trustee.

6.    **Allowed Claim of Muscatellos**

In return for the payment of 30% of the principal investment by the Muscatellos and the other agreements entered into herein, the Muscatellos shall be deemed to have an allowed claim against the Debtor LLC in the amount of $30,000.00, subject to disallowance in the event of a breach of the Muscatellos' representations in paragraph 3 above.

7.    **Court Approval**

The parties agree that this Settlement Agreement and the release herein, being full and final, except for a breach of Muscatello's representations, is subject to approval of the United States Bankruptcy Court and the Trustee shall promptly submit this Settlement Agreement for such approval pursuant to a Motion to Compromise the Trustee's claims against the Muscatellos under Rule 9019 of the Federal Rules of Bankruptcy Procedure. In the event the Court does not approve this Settlement Agreement, this Agreement and all provisions herein shall be null and void.

8.  **Other Provisions**

   A.  **Governing Law**. The validity, effect and construction of this Settlement Agreement and any obligations undertaken pursuant hereto, and any dispute relating or arising from the negotiation and execution of this Settlement Agreement, shall be governed by the laws of the State of Connecticut, without regard to the conflicts of laws provisions. The Trustee and the Muscatellos consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of Connecticut to adjudicate any dispute arising under or related to this Agreement.

   B.  **Breach**. The parties understand, acknowledge and agree that this Settlement Agreement may be used as evidence in any subsequent action or proceeding in which either party alleges a breach of this Settlement Agreement or asserts any claims inconsistent with its terms. In the event a party breaches this Settlement Agreement, the party successful in enforcing this Settlement Agreement shall be entitled to all costs of collection including, but not limited to, reasonable attorney's fees.

   C.  **Attorney's Fees, Costs and Expenses**. The parties shall each bear all of their own attorney's fees, costs and expenses incurred in the negotiation and execution of this Agreement.

   D.  **Consultation with Counsel**. The Muscatellos acknowledge that they have had the opportunity to obtain legal counsel in connection with this Settlement Agreement and have chosen to represent themselves after being advised to obtain counsel by the Trustee's counsel. The Muscatellos hereby acknowledge that they have not received or relied upon any advice, legal or otherwise, of the Trustee or his counsel in entering into this Settlement Agreement.

   E.  **Counterparts**. This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original.

**F.    Titles.** The titles of the paragraphs of this Settlement Agreement are inserted for convenience only and shall not affect the meaning or construction of any of the terms of this Agreement.

**G.    Entire Settlement Agreement and Amendment.** The parties understand, acknowledge and agree that this Settlement Agreement contains and constitutes the entire Agreement and understanding among the parties, that no other representation, promise or covenant of any kind has been made to induce or cause any of the parties to execute the Settlement Agreement, and that all the understandings and agreements of the parties are embodied and expressed herein. The parties also agree that this Settlement Agreement may not be amended, except in a writing signed by each and every one of the parties to this Settlement Agreement.

**H.    Effective Date.** This Settlement Agreement shall not be effective until the "Effective Date", which shall be the date on which this Settlement Agreement is approved by the Court pursuant to a final order. This Settlement Agreement and the compromise reflected herein, once effective, shall remain effective, enforceable and binding on all parties notwithstanding the dismissal or conversion of the Bankruptcy Case to another Chapter of Title 11.

**I.    Waiver.** The failure of any party to insist upon strict adherence to any term of this Settlement Agreement on any occasion shall not be considered a waiver thereof or deprive that party of the right thereafter to insist upon strict adherence to that term of any other term of this Agreement.

**J.    No Admission.** This Settlement Agreement is not an admission of liability by any of the parties and shall not be construed as such in any subsequent proceeding.

IN WITNESS WHEREOF, the parties hereto, intending to be legally bound, have duly executed this Settlement Agreement in multiple originals as of the last date shown below.

DATE: _____, 2010     JAMES BERMAN, TRUSTEE OF THE ESTATES OF MICHAEL S. GOLDBERG AND MICHAEL S. GOLDBERG, LLC

_____

DATE: July 2, 2010     _____
                                   Richard Muscatello

DATE: July 2, 2010     _____
                                   Diana Muscatello

Goldberg  
Positive accounts per Day Schedule

| Account | Date | Description | ck# | Debit (Withdrawal) | Credit (Deposit) | |
|---|---|---|---|---|---|---|
| BoA_0188 | 4/9/2008 | Richard Muscatello | | | 90,000.00 | Richard Muscatello |
| BoA_0188 | 6/30/2008 | Richard Muscatello | 1099 | (18,000.00) | | Richard Muscatello |
| BoA_0188 | 8/29/2008 | Richard Muscatello | | | 10,000.00 | Richard Muscatello |
| BoA_0188 | 9/19/2008 | Richard Muscatello | 1192 | (18,000.00) | | Richard Muscatello |
| BoA_0188 | 12/24/2008 | Richard Muscatello | 1318 | (18,000.00) | | Richard Muscatello |
| BoA_0188 | 2/17/2009 | Richard Muscatello | 1423 | (18,000.00) | | Richard Muscatello |
| BoA_0188 | 4/15/2009 | Richard Muscatello | 1473 | (18,000.00) | | Richard Muscatello |
| BoA_0188 | 6/24/2009 | Richard Muscatello | 1598 | (18,000.00) | | Richard Muscatello |
| BoA_0188 | 9/22/2009 | Richard Muscatello | 1745 | (18,000.00) | | Richard Muscatello |
| | | **Richard Muscatello Total** | | **(126,000.00)** | **100,000.00** | |
| | | | | **(26,000.00)** | | |

# BUSINESS INVESTMENT AGREEMENT FORM
## ( Diamond Lot Liquidation)

**Note:** The agreement to follow is a legal and binding agreement for both parties included. Any legal action to commence in regards to this agreement will require that the agreement be considered a legal contract.

## TERMS OF AGREEMENT:

The following is a formal written agreement between Michael S. Goldberg representing Acquisitions Unlimited Group and Richard & Diana Muscatello. Mr. Goldberg has received an amount totaling $90,000.00 in investment capital from Richard & Diana Muscatello. This capital is to be used for the purchase of diamonds on April 18, 2008 for resale. Upon resale of said property Richard & Diana Muscatello will receive the initial principal back of $90,000.00 plus a 20% profit margin for the use of the investment capital in this transaction, which will total $18,000.00. The date for return on investment is scheduled for June 18, 2008. Any changes in this date must be issued to Richard & Diana Muscatello in writing 30 days prior to said date.

The following are the criteria of this contract:

- All diamonds will be either GIA, IGL, or EGL certified before transaction is completed
- Certification process is scheduled for April 24 thru May 8 with Weinberg & Stearns.
- Principal of investment is guaranteed by the appraised value of the diamonds
- Copies of lot manifest will be maintained for record for shipping and/or appraisal
- Payment of return will either be cash, treasurer's check, or wire
- Reinvestment of capital for future transactions is at the discretion of Richard & Diana Muscatello

Total amount due is $108,000.00, all shipping or fees regarding transaction will be paid for by Mr. Goldberg. Any questions during the period of this 60 day investment time frame will be handled by Mr. Goldberg.

Contact:   Mr. Michael S. Goldberg
           P.O. Box 290585
           Wethersfield, CT 06129-0585
           (860) 888-7780

Richard Muscatello       _signature_       Date 4-8-08
Diana Muscatello         _signature_       Date 4-8-08

Michael S. Goldberg      _signature_       Date 4/7/08