## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into between JAMES BERMAN, TRUSTEE (the "Trustee) OF THE ESTATES OF MICHAEL S. GOLDBERG and MICHAEL S. GOLDBERG, LLC (collectively the "Debtors") and KEVIN FOURNIER ("Fournier") and NAN HOLDINGS, L.P. ("Nan") as of the Effective Date shown below:

WHEREAS, over the last twelve years, Michael S. Goldberg ("Goldberg") and his single member limited liability company, Michael S. Goldberg, LLC ("Debtor LLC"), operated a Ponzi scheme (the "Goldberg Scheme")[1];

WHEREAS, the Goldberg Scheme promised (and for a long time, paid) rates of return of up to (and in some cases, exceeding) twenty percent (20%) per quarter, in purportedly risk-free investments involving either the purchase of foreclosed business assets (such as structural steel, aluminum and other construction material) from Chase Manhattan Bank at prices supposedly low enough to allow Goldberg to resell those assets (usually within ninety (90) days of purchase) to large institutions at profit margins of up to one hundred (100%) percent (the "Chase Asset Deals") or purchase and resale of diamonds ("Diamond Deals");

WHEREAS, many (but not all) of the investors in the Chase Asset Deals and the Diamond Deals were expecting to receive an annualized rate of return of over one hundred

---

[1] A Ponzi scheme is a fraudulent pyramid-type scheme named after Charles Ponzi. Cunningham v. Brown, 265 U.S. 1 (1924). In such a scheme, money from new investors is used to pay artificially high returns to earlier investors in order to create an appearance of profitability and attract new investors so as to perpetuate the scheme. See Bear Stearns Servs. Corp. v. Gredd., 397 B.R. 1, 8-10 (S.D.N.Y. 2007) (citing Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1088 n. 3 (2d Cir. 1995)); see, also In re: Unified Commercial Capital Inc. 260 B.R. 343 (Bankr. W.D.N.Y. 2001) ("A Ponzi scheme, as that term is generally used, refers to an investment scheme in which returns to investors are not financed through the success of the underlying business venture, but are taken from principal sums of newly attracted investments. Typically, investors are promised larger returns for their investments. Initial investors are actually paid the promised returns, which attracts additional investors."). There is a general rule - known as the "Ponzi presumption" - that such a scheme demonstrates fraudulent intent as matter of law because "transfers made in the course of a Ponzi scheme could have been made for no purpose other than to hinder, delay or defraud creditors." Bear Stearns v. Gredd., at 8-10. See also Donnell v. Kowell, 533 F.2d 462, 770 (9th Cir. 2008), cert. den. 129 S.Ct. 640 (2008); SEC v. Resource Dev. Int'l, LLC, 487 F.3d 295, 304 (5th Cir. 2007); Armstrong v. Collins, 2010 Bankr. LEXIS 280 75*63 (S.D.N.Y. 2010).

(100%) percent on an after-tax basis, in what was represented by Goldberg as virtually risk-free deals;

WHEREAS, hundreds of investors invested funds with the Debtors based on these high rates of return on these virtually risk-free deals;

WHEREAS, when major investors began demanding full payment on their investments, instead of "rolling them over," the Goldberg Scheme became more and more difficult to maintain. Goldberg began making later and later payments while he tried to find replacement investors so that he could pay off those investors who were demanding their money. This created increased concern among large investors who, for understandable reasons, feared the worst in terms of the bona fides of Goldberg's transactions. This caused those investors to put Goldberg under increasing pressure and scrutiny;

WHEREAS, ultimately, Goldberg was sued in the fall of 2009 and his assets were frozen by a group of large investors whose contracts with Goldberg were never paid. In November, 2009, Goldberg turned himself in to federal authorities. At about the same time, those investors who had sued Goldberg and Debtor LLC for fraud joined together to commence the involuntary bankruptcy which resulted in the Trustee's appointment, in which capacity he brings this action for the benefit of all creditors of the estate;

WHEREAS, Goldberg has entered a plea of guilty to federal wire fraud charges in connection with the Goldberg Scheme. In Goldberg's plea agreement, he acknowledged that the Goldberg Scheme was a pure, fraudulent, and illegal Ponzi scheme;

WHEREAS, on November 18, 2009 (the "Petition Date"), certain petitioning creditors filed an involuntary petition for relief under Chapter 7 of the Bankruptcy Code against each of the Debtors;

2

WHEREAS, on November 24, 2009, the Court entered the Order for Relief in the Debtors' cases (the "Bankruptcy Cases");

WHEREAS, by Orders dated January 11, 2010, the Court confirmed the election of James Berman as Chapter 7 Trustee in the Bankruptcy Cases;

WHEREAS, Fournier and Nan entered into written contracts with "Michael S. Goldberg representing Acquisitions Unlimited Group" attached hereto as Exhibit 1;

WHEREAS, on October 13, 2009, Fournier received a payment from the Debtor LLC in the amount of $1,000,000.00 and on October 30, 2009, Fournier received a payment from the Debtor LLC in the amount of $1,990,000.00, which Fournier claims is partially for the benefit of Nan (collectively the "Preference Amount"), and said payments were within the ninety day preference period prior to Petition Date;

WHEREAS, Fournier invested $600,000.00 of new value in the Goldberg Scheme on November 3, 2009, and Nan invested $1,900,000.00 in the Goldberg Scheme on November 3, 2009, all of which had been transferred by Fournier to Nan after receiving it from Goldberg;

WHEREAS, Fournier and Nan have represented to the Trustee that they had no knowledge that the Goldberg Scheme was a Ponzi scheme until after Goldberg's arrest, and the Trustee has no reason or basis to disbelieve this representation;

WHEREAS, Fournier and Nan have represented to the Trustee that, before Goldberg's arrest, they were not aware of any facts which would indicate that the Goldberg Scheme was a Ponzi scheme.;

WHEREAS, Fournier and Nan have represented to the Trustee that they received no compensation from Goldberg or other investors in connection with the Goldberg Scheme, other

3

than the amounts set forth on Exhibit A and that they have never received any payment or commission in return for persuading any other investor to invest in the Goldberg Scheme[2];

WHEREAS, Fournier has filed a claim in the Bankruptcy case of the Debtor LLC in the amount of $3,750,000.00 (Claim 25-1); and

WHEREAS, Fournier has also filed a claim in the Estate of Michael S. Goldberg in the amount of $3,750,000.00 (Claim 27-1).

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth herein, and based upon the accuracy and truth of the representations made by Fournier and Nan to the Trustee, and with the intent to be legally bound, it is agreed between the undersigned as follows:

## 1.   Payment Terms

Fournier and/or Nan shall pay the Trustee $1,550,000.00 (the "Returned Funds") by no later than November 30, 2010. Time shall be of the essence. The payment shall be in the form of a bank or certified check, or wire transfer, payable to James Berman, Trustee of the Estate of Michael S. Goldberg, LLC.

## 2.   Payment Basis

a.     The payment in paragraph 1 represents a substantial portion of the Preference Amount. The Trustee calculates his maximum preference claim to be approximately $2,390,000.00, without any "new value" credit to Fournier for the subsequent payment by Nan to Goldberg after the Preference Amount.[3] Moreover, Nan was a creditor in the amount of $850,000.00 at the time the Preference Amount was paid to Fournier. Nan and Fournier assert

---

[2]   Goldberg had agreed to pay Fournier commissions on investors he brought in to the Goldberg Scheme, but no such commissions were ever paid.
[3]   Fournier was owed $2,690,000.00 when he received the Preference Amount. Fournier then paid $600,000.00 of new value into the Goldberg Scheme. Thus, the Trustee's maximum recovery is most likely approximately $2,100,000.00.

that certain of the Preference Amount was paid "on account" of Nan's claim and would therefore have a substantial new value defense.

    b.    Fournier has also claimed that he is entitled to the benefit of a payment of $1,900,000 of new value provided by Nan to the Goldberg Scheme on November 3, 2009.

    c.    The Trustee disputes these theories but acknowledges certain risks if he were to seek to recover the entire Preference Amount.

## 3.    Fournier's and Nan's Representations

This Settlement is being entered into based upon Fournier's and Nan's express representations that: (1) they were never aware that the Goldberg Scheme was a Ponzi scheme prior to the Petition Date; (2) they never received any payment or commission in return for persuading any other investor to invest in the Goldberg Scheme; (3) they received no compensation, directly or indirectly, from the Goldberg Scheme, except as set forth on Exhibit A; and (4) that they had no knowledge concerning any fact which would have placed them on inquiry notice that the Goldberg Scheme was a Ponzi scheme. Fournier and Nan further represent that no entity owned or controlled by them, no family member and no "insider" of Fournier or Nan, as such term is defined in 11 U.S.C. § 101(31), has received any payment or benefit, directly or indirectly, from the Goldberg Scheme except as set forth on Exhibit A. If, at any time, these representations are determined by the Court, after notice and a hearing, to be materially false, the release set forth in Paragraph 4 shall be null and void.

## 4.    Trustee's Release of Fournier and Nan

In consideration of the payment of the Returned Funds, the Trustee, hereby expressly releases any and all claims that he may have against Fournier and Nan, and their heirs, devisees, representatives, partners, members, and assigns ("Releasees") relating to their investment in the

Goldberg Scheme, including any and all actions, causes of action, rights, claims, costs, liabilities, damages, losses, expenses, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, expenses, executions, compensation, or demands whatsoever against said Releasees, the Trustee ever had, now has or which he shall or may have in connection with the transactions set forth on Exhibit A.

## 5.    Allowed Claim of Fournier and Nan

Claims 25-1 in the case of the Debtor LLC and 27-1, in the case of the Debtor, shall be deemed amended to reflect a claim for Fournier of $300,000.00 in both cases and a claim for Nan of $2,747,500.00 in both cases which shall be deemed allowed as against the Debtor LLC only. This Agreement does not affect the allowance or disallowance of the claims against the estate of Michael S. Goldberg. In return for the payment in paragraph 1 and the other agreements entered into herein, Fournier shall be deemed to have an additional allowed claim against the Debtor LLC only in the amount of $1,550,000.00, subject only to disallowance in the event of a breach of the representations in paragraph 3 above.

## 6.    Court Approval

The parties agree that this Settlement Agreement and the release herein, being full and final, except for a breach of Fournier's and Nan's representations, is subject to approval of the United States Bankruptcy Court and the Trustee shall promptly submit this Settlement Agreement for such approval pursuant to a Motion to Compromise the Trustee's claims against Fournier and Nan under Rule 9019 of the Federal Rules of Bankruptcy Procedure. In the event the Court does not approve this Settlement Agreement, this Agreement and all provisions herein shall be null and void.

7.    <u>**Assignment of Claim**</u>

As a condition of this Agreement to the Trustee, Fournier and Nan hereby assign to the Trustee any and all Claims as such term is defined in Section 1015 of the Bankruptcy Code of any kind whatsoever that they may have concerning the Goldberg Scheme against any parties other than the parties to this Agreement. Fournier and Nan agree that, if necessary, they will cooperate in the proceeding of such claims, including executing a separate assignment as and when necessary.

8.    <u>**Other Provisions**</u>

A.    <u>**Governing Law**</u>.   The validity, effect and construction of this Settlement Agreement and any obligations undertaken pursuant hereto, and any dispute relating or arising from the negotiation and execution of this Settlement Agreement, shall be governed by the laws of the State of Connecticut, without regard to the conflicts of laws provisions. The Trustee, Fournier and Nan consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of Connecticut to adjudicate any dispute arising under or related to this Agreement.

B.    <u>**Breach**</u>.   The parties understand, acknowledge and agree that this Settlement Agreement may be used as evidence in any subsequent action or proceeding in which either party alleges a breach of this Settlement Agreement or asserts any claims inconsistent with its terms. In the event a party breaches this Settlement Agreement, the party successful in enforcing this Settlement Agreement shall be entitled to all costs of collection including, but not limited to, reasonable attorney's fees.

C.    <u>**Attorney's Fees, Costs and Expenses**</u>.   The parties shall each bear all of their own attorney's fees, costs and expenses incurred in the negotiation and execution of this Agreement.

**D.     Consultation with Counsel**.  Fournier and Nan acknowledge that they have consulted with Thomas Finn, Esquire of the firm of Jorden Burt in connection with this Settlement Agreement.  Fournier and Nan hereby acknowledge that they have not received or relied upon any advice, legal or otherwise, of the Trustee or his counsel in entering into this Settlement Agreement.

**E.     Counterparts**.  This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original.

**F.     Titles**.  The titles of the paragraphs of this Settlement Agreement are inserted for convenience only and shall not affect the meaning or construction of any of the terms of this Agreement.

**G.     Entire Settlement Agreement and Amendment**.   The parties understand, acknowledge and agree that this Settlement Agreement contains and constitutes the entire Agreement and understanding among the parties, that no other representation, promise or covenant of any kind has been made to induce or cause any of the parties to execute the Settlement Agreement, and that all the understandings and agreements of the parties are embodied and expressed herein. The parties also agree that this Settlement Agreement may not be amended, except in a writing signed by each and every one of the parties to this Settlement Agreement.

**H.     Effective Date**.   This Settlement Agreement shall not be effective until the "Effective Date", which shall be the date on which this Settlement Agreement is approved by the Court pursuant to a final order.  This Settlement Agreement and the compromise reflected herein, once effective, shall remain effective, enforceable and binding on all parties notwithstanding the dismissal or conversion of the Bankruptcy Case to another Chapter of Title 11.

I.     **Waiver**.  The failure of any party to insist upon strict adherence to any term of this Settlement Agreement on any occasion shall not be considered a waiver thereof or deprive that party of the right thereafter to insist upon strict adherence to that term of any other term of this Agreement.

J.     **No Admission**.  This Settlement Agreement is not an admission of liability by any of the parties and shall not be construed as such in any subsequent proceeding.

**IN WITNESS WHEREOF**, the parties hereto, intending to be legally bound, have duly executed this Settlement Agreement in multiple originals as of the last date shown below.

DATE: _November 2_, 2010          JAMES BERMAN, TRUSTEE OF THE ESTATES
OF MICHAEL S. GOLDBERG AND
MICHAEL S. GOLDBERG, LLC

DATE: _November 2_, 2010

DATE: _November 2_, 2010
_____
Kevin Fournier

_____
Nan Holdings, L.P.

# EXHIBIT 1

AUG 17, 2008 12:35A    817 22/2009  14:07   5082282577          860: ISLAND PARCEL PLUS                    PAGE  82          page 1

## AGREEMENT

## ( BAUSCH & LOMB CONTRACT)

Agreement made as of July 16, 2009 by and between **Michael S. Goldberg, LLC d/b/a Acquisitions Unlimited Group** (hereinafter "AUG") having a business address of 330 ROBERTS STREET  SUITE 403 EAST HARTFORD, CT 06108 and Kevin Fournier (hereinafter "KF") having a residence address of _6084 E. Cactus Wren Rd. Paradise Valley, AZ 85253_

WHEREAS, AUG has an agreement with Chase Manhattan Bank (hereinafter "Bank") dated November 12, 1999 and updated and amended from time to time, wherein, AUG shall purchase certain material from Bank (hereinafter "Bank Agreement"); and,

WHEREAS, AUG has an agreement with Bausch & Lomb (hereinafter "Bausch & Lomb") dated March 21, 2009 which provides that Bausch & Lomb shall purchase said material from AUG immediately after AUG takes ownership from Bank (hereinafter "Bausch & Lomb Agreement"); and,

WHEREAS, KF has agreed and desires to provide financial backing and funding for the AUG purchase in exchange for a certain hereinafter described return on capital.

NOW THEREFORE, AUG and KF agree as follows:

1.  KF shall invest Three Hundred & Fifty Thousand and 00/100 Dollars ($350,000.00) in the venture.
2.  KF shall make said investment by wiring/check said investment to an account set up by AUG for purposes of this transaction on or before July 23, 2009. AUG shall provide the bank wire instructions with routing numbers etc. contemporaneously with execution of this agreement. BANK OF AMERICA         188 ACCOUNT # and 026009593 ROUTING #. Account name is MICHAEL S GOLDBERG LLC DBA ACQUISITIONS UNLIMITED GROUP.
3.  AUG shall utilize the invested funds solely for the purposes of purchasing the material from the Bank pursuant to the Agreement with the Bank.
4.  AUG's agreement with the Bank provides a Capital Preservation Clause which provides that in the event that the Bausch & Lomb Agreement is not consummated, the Bank agrees to take back title to the material and return the invested funds.
5.  In the event the Bank Agreement and Bausch & Lomb Agreements are not both completed as contemplated herein, AUG shall return the invested funds to KF within 5 business days of AUG's receipt from Bank.
6.  Upon consummation of the Bank Agreement and Bausch & Lomb Agreement as contemplated herein, AUG shall pay KF an investment return equal to fifteen percent (15%) of the investment amount.

KFNH 000001

page 2

AUG 17,2008 12:35A

B60!

JUL 22,2008 01:43P

page 3

5002282577

7. AUG shall complete the Bank Agreement and Bausch & Lomb Agreement on or
   before September 30, 2009.
8. AUG shall pay KF the amount specified in paragraph 6 on or before the earlier of
   October 15, 2009.
9. Upon completion of the Bausch and Lomb Agreement, KF, at his sole discretion,
   can request from AUG the complete withdrawal or any part thereof of the
   investment ($350,000) and the 15% investment return.
10. KF affirms and states that it and no member if its investment group is subject to
    the terms and provisions of the Patriot Act which would preclude their making the
    investment or in receiving the proceeds therefrom.
11. This agreement is instituted only for this period designated.
12. Michael S. Goldberg is also listed as a PERSONAL GURANTOR on the
    transaction to ensure its full execution.

WITNESSETH

MICHAEL S. GOLDBERG, LLC
D/B/A ACQUISITIONS UNLIMITED
GROUP

Michelle Gleason

Michelle Gleason

By_____
Michael S. Goldberg, Member      7/22/09
Duly authorized

KEVIN FOURNIER

By_____      7/22/09

KFNH 000002

AUG 19,2008 02:35P   Aug 18 2008 8:11am   Fournier Residence   8605 __   480-   page 1
P.1

## AGREEMENT

## ( BECHTEL CORPORATION CONTRACT)

Agreement made as of August 17, 2009 by and between **Michael S. Goldberg, LLC
d/b/a Acquisitions Unlimited Group** (hereinafter "AUG") having a business address of
**330 ROBERTS STREET  SUITE 403 EAST HARTFORD, CT 06108** and **Kevin
Fournier** (hereinafter "KF") having a residence address of <u>6684 E. Cactus Wren Rd.
Paradise Valley, AZ, 85253.</u>

WHEREAS, AUG has an agreement with Chase Manhattan Bank (hereinafter "Bank")
dated November 12, 1999 and updated and amended from time to time, wherein, AUG
shall purchase certain material from Bank (hereinafter "Bank Agreement"); and,

WHEREAS, AUG has an agreement with Bechtel Corporation (hereinafter "Bechtel")
dated July 20, 2009 which provides that Bechtel Corporation shall purchase said material
from AUG immediately after AUG takes ownership from Bank (hereinafter "Bechtel
Agreement"); and,

WHEREAS, KF has agreed and desires to provide financial backing and funding for the
AUG purchase in exchange for a certain hereinafter described return on capital.

NOW THEREFORE, AUG and KF agree as follows:

1. KF shall invest Two million & six hundred thousand and 00/100 Dollars
   ($2,600,000.00) in the venture.
2. KF shall make said investment by wiring/check said investment to an account set
   up by AUG for purposes of this transaction on or before August 19, 2009. AUG
   shall provide the bank wire instructions with routing numbers etc.
   contemporaneously with execution of this agreement. BANK OF AMERICA
           188 ACCOUNT # and 026009593 ROUTING #. Account name is
   MICHAEL S GOLDBERG LLC DBA ACQUISITIONS UNLIMITED GROUP.
   The invested funds of $2,600,000 will be comprised as follows: a check from
   Nan Holdings for $547,500; $402,500 which are the proceeds from the Bausch &
   Lomb contract dated July 16, 2009; and a bank wire in the amount of $1,650,000.
3. AUG shall utilize the invested funds solely for the purposes of purchasing the
   material from the Bank pursuant to the Agreement with the Bank.
4. AUG's agreement with the Bank provides a Capital Preservation Clause which
   provides that in the event that the Bechtel Agreement is not consummated, the
   Bank agrees to take back title to the material and return the invested funds.
5. In the event the Bank Agreement and Bechtel Agreements are not both completed
   as contemplated herein, AUG shall return the invested funds to KF within 5
   business days of AUG's receipt from Bank.
6. After release of the goods for shipment a 15 business day period shall be
   instituted as the "float period" on amount which an additional 10% ($260,000)

AUG 18.2008 10:47A   KFNH 000003

will be paid on the investment amount and wired to KF's Bank Of America account ending in 01012 on or before September 11, 2009. Wiring instructions will be provided by KF.

7. Upon consummation of the Bank Agreement and Bechtel Agreement as contemplated herein, AUG shall pay KF an investment return equal to fifteen percent (15%) of the investment amount. According to paragraph 9, KF, at his sole discretion, can request from AUG the complete withdrawal or any part thereof of the investment amount of $2,600,000 and the 15% investment return equal to $390,000.

8. AUG shall complete the Bank Agreement and Bechtel Agreement on or before October 5, 2009.

9. AUG shall pay KF the amount specified in paragraph 7 on or before the earlier of October 9, 2009.

10. KF affirms and states that it and no member if its investment group is subject to the terms and provisions of the Patriot Act which would preclude their making the investment or in receiving the proceeds therefrom.

11. This agreement is instituted only for this period designated.

12. Michael S. Goldberg is also listed as a PERSONAL GURANTOR on the transaction to ensure its full execution.

WITNESSETH

_(signature)_

Todd Molloy

_(signature)_

MICHAEL S. GOLDBERG, LLC
D/B/A ACQUISITIONS UNLIMITED
GROUP

By _(signature)_                    8/18/09
Michael S. Goldberg, Member
Duly authorized

KEVIN FOURNIER

By _(signature)_

8/18/09

NOV 03,2008 12:17A

860:

## AGREEMENT

## (UTC-HAMILTON SUNDSTRAND FLOAT CONTRACT)

Agreement made as of November 3, 2009 by and between **Michael S. Goldberg, LLC d/b/a Acquisitions Unlimited Group** (hereinafter "AUG") having a business address of 330 ROBERTS STREET  SUITE 403 EAST HARTFORD, CT 06108 and **Nan Holdings LP** (hereinafter "INVESTOR") having a residence address of 6684 E. Cactus Wren Rd, Paradise Valley, AZ 85253.

WHEREAS, AUG has an agreement with Chase Manhattan Bank (hereinafter "Bank") dated November 12, 1999 and updated and amended from time to time, wherein, AUG shall purchase certain material from Bank (hereinafter "Bank Agreement"); and,

WHEREAS, AUG has an agreement with UTC-HAMILTONSUNDSTRAND (hereinafter "UTC-HAMILTONSUNDSTRAND") dated OCTOBER 15, 2009 which provides that UTC-HAMILTONSUNDSTRAND shall purchase said material from AUG immediately after AUG takes ownership from Bank (hereinafter "UTC-HAMILTONSUNDSTRAND Agreement"); and,

WHEREAS, INVESTOR has agreed and desires to provide financial backing and funding for the AUG purchase in exchange for a certain hereinafter described return on capital.

NOW THEREFORE, AUG and INVESTOR agree as follows:

1. INVESTOR shall invest Two million five hundred thousand and 00/100 Dollars ($2,500,000) in the venture.
2. INVESTOR shall make said investment by wiring/check said investment to an account set up by AUG for purposes of this transaction on or before November 3, 2009.  AUG shall provide the Bank of America wire instructions with routing numbers etc. contemporaneously with execution of this agreement.
3. AUG shall utilize the invested funds solely for the purposes of purchasing the material from the Bank pursuant to the Agreement with the Bank;
4. AUG's agreement with the Bank provides a Capital Preservation Clause, which provides that in the event that the UTC-HAMILTONSUNDSTRAND Agreement is not consummated, the Bank agrees to take back title to the material and return the invested funds.
5. In the event the Bank Agreement and UTC-HAMILTONSUNDSTRAND Agreements are not both completed as contemplated herein, the invested funds shall be returned to INVESTOR directly from the account designated in paragraph 2.
6. Upon consummation of the Bank Agreement and UTC-HAMILTONSUNDSTRAND Agreement as contemplated herein, AUG shall pay INVESTOR an investment return equal to ten percent (10%) of the investment

KFNH 000005

amount plus the investment amount defined in paragraph. According to paragraph 9, KF, at his sole discretion, can request from AUG the complete withdrawal or any part thereof of the investment amount of $2,500,000 and the 10% investment return equal to $250,000.

7. AUG shall complete the Bank Agreement and UTC-HAMILTONSUNDSTRAND Agreement on or before November 13, 2009.

8. AUG shall pay INVESTOR the amount specified in paragraph 6 on or before November 14, 2009.

9. Investor affirms and states that it and no member if its investment group is subject to the terms and provisions of the Patriot Act which would preclude their making the investment or in receiving the proceeds therefrom.

10. This Agreement is terminated upon receipt by Investor of the funds specified in paragraph 6.

11. Michael S. Goldberg is a PERSONAL GURANTOR on this Agreement to ensure its full execution.

WITNESSETH

MICHAEL S. GOLDBERG, LLC
D/B/A ACQUISITIONS UNLIMITED
GROUP

By _____ Member.
Michael S. Goldberg, Member
Duly authorized

By _____
Kevin Fournier

KFNH 000006

8605

SEP 30,2008 08:14P

## AGREEMENT

## (BAUSCH & LOMB CONTRACT)

Agreement made as of September 30, 2009 by and between **Michael S. Goldberg, LLC** d/b/a Acquisitions Unlimited Group (hereinafter "AUG") having a business address of 330 ROBERTS STREET SUITE 403 EAST HARTFORD, CT 06108 and *Kevin Fournier* (hereinafter "INVESTOR") having a residence address of *6684 E. Cactus Wren Road, Paradise Valley, AZ 85253.*

WHEREAS, AUG has an agreement with Chase Manhattan Bank (hereinafter "Bank") dated November 12, 1999 and updated and amended from time to time, wherein, AUG shall purchase certain material from Bank (hereinafter "Bank Agreement"); and,

WHEREAS, AUG has an agreement with BAUSCH & LOMB (hereinafter "BAUSCH & LOMB") dated September 11, 2009 which provides that BAUSCH & LOMB shall purchase said material from AUG immediately after AUG takes ownership from Bank (hereinafter "BAUSCH & LOMB Agreement"); and,

WHEREAS, INVESTOR has agreed and desires to provide financial backing and funding for the AUG purchase in exchange for a certain hereinafter described return on capital.

NOW THEREFORE, AUG and INVESTOR agree as follows:

1. INVESTOR shall invest One million five hundred thousand and 00/100 Dollars ($1,250,000) in the venture

2. INVESTOR shall make said investment by wiring/check said investment to an account set up by AUG for purposes of this transaction on or before October 1, 2009. AUG shall provide *Chase of Manhattan's* wire instructions with routing numbers etc. contemporaneously with execution of this agreement. *INVESTOR shall designate his account for the receipt of monies due him under this Agreement with wiring instructions, routing numbers, etc. contemporaneously with the execution of this agreement.*

3. AUG shall utilize the invested funds solely for the purposes of purchasing the material from the Bank pursuant to the *Bank* Agreement with the Bank *and solely for the purpose of selling said material to BAUSCH & LOMB.*

4. AUG's agreement with the Bank provides a Capital Preservation Clause, which provides that in the event that the BAUSCH & LOMB Agreement is not consummated, the Bank agrees to take back title to the material and return the invested funds.

5. In the event the Bank Agreement and BAUSCH & LOMB Agreements are not both completed as contemplated herein, the invested funds shall be returned to INVESTOR directly from the account designated in paragraph 2.

KFNH 000007

page 2

860:

SEP 30, 2008 08:14P

6. Upon consummation of the Bank Agreement and BAUSCH & LOMB Agreement as contemplated herein, AUG shall pay INVESTOR an investment return equal to twenty-three percent (23%) of the investment amount plus the investment amount defined in paragraph 1.

7. AUG shall complete the Bank Agreement and BAUSCH & LOMB Agreement on or before October 30, 2009.

8. AUG shall pay INVESTOR the amount specified in paragraph 6 on or before October 31, 2009.

9. Investor affirms and states that it and no member if its investment group is subject to the terms and provisions of the Patriot Act which would preclude their making the investment or in receiving the proceeds therefrom.

10. This Agreement is terminated upon receipt by Investor of the funds specified in paragraph 6.

11. *AUG will take whatever steps are necessary to insure that the monies due the INVESTOR under this Agreement* will be made directly from BAUSCH & LOMB to the *INVESTOR* upon completion of the contract. INVESTOR shall designate the account and all applicable wire transfer information which will be relayed by designated AUG representative to insure direct payment of amount due. *AUG agrees not to take any steps to prevent, divert, delay, suspend or in any way effectuate the direct transfer to the INVESTOR of the monies due the INVESTOR under this Agreement*

12. Michael S. Goldberg is a PERSONAL GURANTOR on this Agreement to ensure its full execution.

13. *AUG shall advise BAUSCH & LOMB that once payment by it is to be made to AUG, that from the payment due AUG it shall make any and all payments due to INVESTOR pursuant to this Agreement directly to INVESTOR to the INVESTOR's Account identified in Paragraph 2 above without any further instruction or approval required by AUG.*

14. *AUG will take obtain from BAUSCH & LOMB within five (5) days of the date that BAUSCH & LOMB purchases the materials, either their written consent, acknowledgment and agreement to honor the terms of this Agreement or their signed consent to same endorsed on this Agreement.*

WITNESSETH

MICHAEL S. GOLDBERG, LLC
D/B/A ACQUISITIONS UNLIMITED
GROUP

By _____ Member.
Michael S. Goldberg, Member
Duly authorized

KFNH 000008

SEP 30,2008 08:15P

860:

page 3

By

KFNH 000009

# EXHIBIT A

| Account | Date | Description | ck# | Debit (Withdrawal) | Credit (Deposit) |
|---------|------|-------------|-----|--------------------|-------------------|
| BoA_0188 | 7/22/2009 | Kevin Fournier | | | 350,000.00 |
| BoA_0188 | 8/19/2009 | Kevin Fournier | | | 1,650,000.00 |
| BoA_0188 | 9/15/2009 | Kevin Fournier | | (260,000.00) | |
| BoA_0188 | 9/30/2009 | Kevin Fournier | | | 800,000.00 |
| BoA_0188 | 10/1/2009 | Kevin Fournier | | | 150,000.00 |
| BoA_0188 | 10/13/2009 | Kevin Fournier | | (1,000,000.00) | |
| BoA_0188 | 10/30/2009 | Kevin Fournier | | (1,990,000.00) | |
| BoA_0188 | 11/3/2009 | Kevin Fournier | | | 600,000.00 |
| | | **Kevin Fournier Total** | | (3,250,000.00) | 3,550,000.00 |
| | | | | | **300,000.00** |
| | | Investment | | 3,550,000.00 | |
| | | Loss | | 300,000.00 | |

| Account | Date | Description | ck# | Debit (Withdrawal) | Credit (Deposit) |
|---------|------|-------------|-----|--------------------|-----------------|
| BoA_0188 | 8/19/2009 | Kevin Fournier (Nan Holdings) | | | 547,500.00 |
| BoA_0188 | 9/29/2009 | Kevin Fournier (Nan Holdings) | | | 75,000.00 |
| BoA_0188 | 9/30/2009 | Kevin Fournier (Nan Holdings) | | | 225,000.00 |
| BoA_0188 | 11/3/2009 | Kevin Fournier (Nan Holdings) | | | 1,900,000.00 |
| | | **Kevin Fournier (Nan Holdings) Total** | | 0.00 | 2,747,500.00 |
| | | | | | **2,747,500.00** |
| | | Investment | | 2,747,500.00 | |
| | | Loss | | 2,747,500.00 | |