**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

---------------------------------------------------X
In re:                                          :        Chapter 7
                                                :
MICHAEL S. GOLDBERG, L.L.C.                     :        Case No. 09-23370 (ASD)
MICHAEL S. GOLDBERG                             :        Case No. 09-23371 (ASD)
                                                :
        Debtors                                 :        (Jointly Administered Under
                                                :          Case No. 09-23370)
---------------------------------------------------X

**FIRST INTERIM FEE APPLICATION OF ZEISLER & ZEISLER, P.C., COUNSEL TO THE CHAPTER 7 TRUSTEE, SEEKING COMPENSATION AND REIMBURSEMENT OF DISBURSEMENTS FOR THE PERIOD JANUARY 7, 2010 THROUGH AUGUST 30, 1010**

TO:   THE HONORABLE ALBERT S. DABROWSKI
      UNITED STATES BANKRUPTCY JUDGE

Zeisler & Zeisler, P.C., (the "Applicant"), counsel to James Berman, the Chapter 7 Trustee in the administratively consolidated bankruptcy estates (the "Goldberg Bankruptcies") of Michael S. Goldberg (the "Individual Case") and Michael S. Goldberg, L.L.C. (the "LLC Case"), hereby makes this application for compensation and reimbursement of disbursements (the "Application"), and in support thereof, respectfully represents:

1

### I. OVERVIEW

1.      This Application is made for the period from January 7, 2010 through and including August 30, 2010 (the "Fee Period").

2.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2). The statutory predicates for the Application are 11 U.S.C. §§ 330 and 331.

3.      Compensation for the Fee Period is requested in the amount of $597,346.00 representing 1,584.2 hours worked during the Fee Period by Applicant's attorneys excluding the Trustee, James Berman. The Trustee's time, regardless of whether he was providing legal or performing Trustee duties, was not charged to these estates and is separately accounted for in Tab 1 of **Exhibit A** to this Application. Applicant will not seek any compensation for the Trustee's services rendered during the Fee Period other than the Trustee's commission pursuant to 11 U.S.C. § 326(a) at a later date. The total blended hourly rate for the attorneys who worked on this matter (excluding the Trustee) is $377.06 per hour. In addition, Applicant seeks $22,433.77 for reimbursement of out-of-pocket disbursements incurred during the Fee Period.

4. The rates charged by Applicant are identical to, and in some instances, lower than those charged to Applicant's non-bankruptcy clients for the same or similar services. Annexed as part of **Exhibit A** is a schedule of Applicant's billable rates and the total time spent during the Fee Period. Also annexed as part of **Exhibit A** are the daily time records, contemporaneously maintained by each attorney employed by Applicant, reflecting the work performed and time spent on these matters during the Fee Period. **Exhibit A** is divided into sub-matters that reflect the major areas of work performed during the Fee Period. Each attorney's billable hours are set forth in increments of tenths of the hour and totaled as to each sub-matter. The sub-matters are set forth as Tabs 2-5 of **Exhibit A**. **Exhibit A** also contains a schedule of Applicant's out-of-pocket expenses and disbursements for which Applicant seeks reimbursement. Finally, Tab 1 of **Exhibit A** is the total time spent on this matter by the Trustee and the time of attorneys other than the Trustee that Applicant viewed as administrative in nature and therefore is not being charged to these estates. Applicant submits that it erred on the side of not billing for legal services time that could have been charged to the estate as reflected in Tab 1 of **Exhibit A**. Finally, there is certain time recorded in Tabs 2-5 that was not charged to the estates because Applicant believed such time was duplicative or otherwise subject to reduction or elimination. These time entries are identified with a "NC". In sum, Applicant made voluntary reductions of

its billable time during the Fee Period of over $65,000 exclusive of all reductions for Trustee's legal services for which no compensation is being sought herein.

5. Given the size and complexity of this case, the level of services rendered, the results achieved thus far and the amount of billable time that Applicant has determined not to charge to the Estate, Applicant respectfully submits that the compensation requested is fair and reasonable.

## II. SIGNIFICANT ACTIVITIES DURING THE FEE PERIOD

6. The Goldberg Bankruptcies were commenced as involuntary chapter 7 cases pursuant to petitions filed against the Debtors on November 18, 2009. The petitions were filed by a group of creditors who had sued Mr. Goldberg in state court for fraud arising out of what has now been acknowledged by Mr. Goldberg in his Plea Agreement to be a Ponzi scheme (the "Goldberg Scheme"). The Debtors consented to the entry for orders for relief on November 24, 2009. The Trustee was elected on January 7, 2010 and began his duties on that date. The Trustee filed a Motion to Retain Applicant on January 14, 2010 and the order authorizing Applicant's retention entered on January 22, 2010, <u>nunc</u> <u>pro</u> <u>tunc</u> to January 7, 2010. A copy of the order authorizing Applicant's retention as counsel to the Trustee is attached hereto as **Exhibit B**.

7. During the Fee Period, Applicant performed all of the legal services necessary to assist the Trustee in his duties under the Bankruptcy Code including:

(a) investigating the circumstances surrounding the Goldberg Scheme;
(b) working closely with the federal criminal authorities who have been prosecuting Mr. Goldberg;
(c) investigating, commencing and prosecuting various clawback actions designed to recover preferences, fraudulent conveyances and other transfers so as to compensate the creditors of the estate, the vast majority if not all of whom are victims of the Goldberg Scheme;
(d) identifying, recovering and liquidating property of the estate;
(e) investigating and analyzing filed proofs of claim and other claims against the estate;
(f) investigating causes of action against third parties which might lead to additional recoveries for creditors/victims of the Goldberg Scheme.
(g) advising the Trustee on various legal issues related to the Goldberg Scheme and bankruptcy law generally.

8. In connection with the foregoing tasks undertaken by Applicant, Applicant has commenced over eighty (80) preference/fraudulent conveyance turnover lawsuits and is preparing additional actions.

9. As a result of the foregoing efforts by Applicant, the Trustee has recovered or will recover by the end of 2010 at least three million ($3,000,000) dollars. The Applicant is continuing to prosecute clawback actions and attempting to resolve other claims, short of litigation, totaling a face value of over forty million ($40,000,000) dollars[1].

---

[1] The actual value of these actions may be significantly affected by legal defenses, collectability issues and increased claims resulting from recovery by the Trustee.

5

10. Below are the sub-matters on which Applicant has provided services during the Fee Period. **Exhibit A** includes the amount of time spent in tenths of the hour by each attorney for work provided in connection with each particular sub-matter. At the end of each sub-matter identified in **Exhibit A** is a schedule showing each attorney who provided time on that particular sub-matter, the total amount of time expended and the attorney's billing rate. The sub-matters on which Applicant has performed services are as follows:

### A. PREFERENCE AND FRAUDULENT CONVEYANCE LAWSUITS

Applicant's work in connection with preference/fraudulent conveyance litigation involved, among other things, the analysis of the law surrounding Ponzi schemes including the Ponzi scheme presumption, "good faith" under 11 U.S.C. § 550(b)(1) and (2) and under state law, and numerous other legal issues surrounding the prosecution of preference and fraudulent conveyance claims in a Ponzi scheme context against defendants located throughout the country. In addition, Applicant was involved in the drafting and negotiation of complaints, applications for prejudgment remedies, prejudgment remedy orders and agreements, forms for sworn representations and other disclosures designed to ensure fair and appropriate settlements, legal memoranda, settlement agreements, consensual restraining orders, affidavits , turnover agreements, and various other pleadings and documents. Applicant also worked with the Trustee's forensic accountants and the Debtors to prepare for contested prejudgment remedy

hearings, including assembling evidence necessary to establish that the Goldberg Scheme was a "pure" Ponzi scheme involving no legitimate business whatsoever.  Finally, Applicant spent significant time investigating additional information supplied by the Debtors and certain defendants in connection with their defenses to the Trustee's clawback actions.

As set forth in Tab 2 of **Exhibit A**, Applicant is seeking $481,837.50 of fess in connection with work related to preference and fraudulent conveyance litigation.  As of the date of this Application, Applicant has commenced approximately eighty (80) actions against over one hundred (100) defendants.  The two largest actions in this regard are a fourteen million ($14,000,000) dollar lawsuit entitled *James Berman, Trustee for the Estate of Michael S. Goldberg v. Michael S. Goldberg, et al – Adversary Proceeding Number 10-2082*.  Pursuant to this lawsuit the Trustee seeks to recover almost twelve million ($12,000,000) dollars of fictitious "profits" in addition to approximately two million ($2,000,000) dollars of capital invested into the Goldberg Scheme by a group of investors in Connecticut.  This lawsuit involves by far the largest receipt of "profits" by any group of investors in the Goldberg Scheme.  Applicant prepared and filed a complaint in this action and an application for a twelve million ($12,000,000) dollar prejudgment remedy.  Applicant  prepared to prosecute the application for prejudgment remedy but was able to negotiate a consensual prejudgment remedy in the full amount of twelve million ($12,000,000) dollars and obtained both judicial and voluntary liens

against all of the assets of the initial defendants (subject to certain carve-outs and exemptions under Connecticut law). Applicant continues to prosecute this action and has recently obtained authority from the court to cite in approximately forty (40) additional defendants and has prepared pleadings for prejudgment remedies against many of them as well.

In addition to the $14,000,000 lawsuit above, Applicant is at this time pursuing an out of court settlement with an investor group of over thirty-five (35) individuals and entities in Florida who the Trustee believes received approximately ten million ($10,000,000) dollars in preferential payments and over two million ($2,000,000) dollars in fraudulently conveyed investment principal. If a settlement is not obtained promptly, Applicant is prepared to commence a lawsuit and to seek pre-judgment remedies against all of these individuals and entities. In addition to these actions, Applicant has initiated many other clawback actions which have resulted or will soon result in settlements approved by this Court netting approximately (and perhaps more than) three million ($3,000,000) dollars to the estates by year-end. The three (3) most significant of these settled actions during the Fee Period were an action against Mr. Goldberg's former attorney Michael Clinton and his wife in which the Trustee which was settled in the amount of seven hundred and sixty five thousand ($765,000) dollars, seven hundred twenty five thousand ($725,000) dollars of which has already been paid, and two actions against preference/fraudulent conveyance recipients which will result in recoveries to the estate of four

hundred thousand ($400,000) dollars and one million five hundred fifty thousand dollars ($1,550,000), respectively.  Applicant has also obtained or is about to obtain settlements in several other actions which have or will soon result in recoveries of hundreds of thousands of dollars.

A more detailed description of activities in connection with preference/fraudulent conveyance lawsuits is set forth in Tab 2 of **Exhibit A**.

    B.    **PROPERTY OF THE ESTATE LEGAL ISSUES**

As set forth in Tab 3 of **Exhibit A** Applicant is seeking $11,001.50 of fees in connection with its work related to property of the estate legal issues.  This included analyzing the Trustee's authority to sell the Debtor's and a co-owner's interest in liquor stores; analyzing and preparing to prosecute turnover actions in connection with prejudgment remedies and other Goldberg Scheme cash frozen prior to the Petition Date; analyzing the Trustee's ability to exercise certain of the Debtor's stock options, analyzing the Trustee's ability to force the sale of other jointly owned assets among the Debtor and various individuals; and analyzing other legal issues related to the property of the estate.

    C.    **BANKRUPTCY/PONZI SCHEME LEGAL ISSUES**

As set forth in Tab 4 of **Exhibit A**, the Applicant is seeking $94,693.40 in connection with legal work performed relating not to any particular adversary proceeding but in connection

with the Goldberg Scheme as a whole and the intersection of Ponzi scheme and bankruptcy law. Immediately upon his election, the Trustee began investigating allegations that the Debtors together had operated a Ponzi scheme for over ten (10) years. The Trustee and his counsel met with Mr. Goldberg and his criminal and bankruptcy counsel and established protocol and a relationship whereby Mr. Goldberg revealed significant detail regarding how he operated and funded the Goldberg Scheme and who its largest beneficiaries were. In addition, Applicant was able to procure Mr. Goldberg's agreement to waive his attorney/client privilege not only in the individual case, but for the Debtor LLC as well. The Trustee was thus able to gain significant information early in the case which has been beneficial in many ways, including in the prosecuting of various lawsuits to recover preferences and fraudulent conveyances. Equally if not more importantly, the cooperation and assistance of the United States Attorney's Office (the "AUSA") and the Federal Bureau of Investigation (the "FBI") was offered and accepted very early in the Goldberg Bankruptcies. The Trustee and Applicant were given access to all of Mr. Goldberg's documentary evidence and electronic data which Applicant is continuing to analyze. In addition, the Trustee made a decision early in the case to accept the AUSA's and FBI's offer to have the FBI Special Agent on the case perform the initial forensic accounting of all the financial transactions that constitute the Goldberg Scheme[2].

---

[2] This forensic accounting assistance by the FBI has saved the estate hundreds of thousands of dollars in professional fees which would have resulted if the Trustee had required his forensic accountants to do all of the baseline discovery, analysis

Applicant's work in connection with this included: analyzing the Goldberg Scheme and various legal issues involving the Debtors' contracts with investors, the transfers pursuant to those contracts and the legal character and significance of those transactions; analysis of the data provided by the FBI and developing and refining the Trustee's "theory of the case" including a legal strategy designed to maximize recovery while ensuring fairness to the creditors/victims of the Goldberg Scheme; researching and analyzing the evolving and growing body of law within this district, this circuit and nationwide regarding various Ponzi scheme issues including: good faith; inquiry notice and the satisfaction of the duty associated therewith; forfeiture law; the ordinary course of business defense in a Ponzi scheme, the "Ponzi scheme presumption", "value" under 11 U.S.C. §§§ 547, 548, 550 and state law; in pari-delicto issues, confidentiality issues, and other legal issues surrounding the liquidation of assets in the context of a large Ponzi scheme.

Tab 4 of **Exhibit A** contains a detailed description of the work performed by Applicant in connection with bankruptcy/Ponzi scheme legal issues.

### D.     GENERAL BANKRUPTCY LEGAL ISSUES

As set forth on Tab 5 of **Exhibit A**, Applicant is seeking $9,813.50 in connection with general bankruptcy legal issues. Applicant's work in connection with general bankruptcy legal

---

and accounting of the thousands of transactions which make up the approximately $130 million of transactions involved in the Goldberg Scheme.

issues involved legal analysis and advice to the Trustee in connection with various issues that were not directly impacted by the fact that the Debtors were involved in a Ponzi scheme. Applicant's work in this regard included drafting and prosecuting motions in bankruptcy court regarding the ability to file schedules in lieu of the Debtor; motions in connection with extending and/or establishing a new bar date because the victims of the Goldberg Scheme were not initially notified of the bankruptcy; issues regarding confidentiality and protective orders in connection with 2004 exams; and other general bankruptcy legal issues.

Tab 5 of **Exhibit A** contains a detailed description of the work performed by Applicant in connection with general bankruptcy legal issues.

### III. DISBURSEMENTS

During the Fee Period, in the course of its representation of the Trustee, Applicant incurred out-of-pocket expenses in the amount of $22,433.77. Applicant submits that these disbursements were necessary and reasonable in amount. Due to the number of lawsuits in this case, and the number of creditors and other parties in interest receiving notices and pleadings, Applicant incurred substantial costs, including but not limited to, photocopying and distributing voluminous materials. Applicant has made extensive distributions of documents to parties in interest, their representatives and counsel, and many other parties in interest who either were part of negotiations or were actively participating on matters being submitted to the Court on a

regular basis. Those distributions included pleadings, proposed agreements and proposed orders. Due to the expedited nature of many of these items, the distributions were often sent by telecopier and overnight mail.

In order to save time and expense, conference calls were often utilized to discuss important matters and issues necessary to enable the Debtor to formulate a position or further a proceeding or settlement.

## IV. CONCLUSION

WHEREFORE, Applicant respectfully requests that this court enter an Order: (i) awarding the Applicant compensation for the period January 7, 2010 through and including August 30, 2010 in the amount of $597,346.00, for services rendered by Applicant as counsel to James Berman, the Chapter 7 Trustee; (ii) approving the reimbursement of expenses incurred and

expended during the Fee Period in the amount of $22,433.77 for a total interim amount of $619,779.77; and (iii) granting such other and further relief as this Court deems just and proper.

Dated this 11th day of November, 2010 at Bridgeport, Connecticut.

                                       JAMES BERMAN, CHAPTER 7 TRUSTEE FOR THE ESTATES OF MICHAEL S. GOLDBERG, L.L.C. AND MICHAEL S. GOLDBERG

By:   / s / Jed Horwitt
       Jed Horwitt (ct04778)
       Zeisler & Zeisler, P.C.
       558 Clinton Avenue
       Bridgeport, CT 06605
       Tel. 203-368-4234
       Fax 203-367-9678
       Email: jhorwitt@zeislaw.com