**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

---------------------------------------------------X
In re:                                          :         Chapter 7
                                                :
MICHAEL S. GOLDBERG, L.L.C.   :         Case No. 09-23370 (ASD)
MICHAEL S. GOLDBERG               :         Case No. 09-23371 (ASD)
                                                :
          Debtors                              :         (Jointly Administered Under
                                                :            Case No. 09-23370)
---------------------------------------------------X

**SECOND INTERIM FEE APPLICATION OF ZEISLER & ZEISLER, P.C., COUNSEL TO THE CHAPTER 7 TRUSTEE, SEEKING COMPENSATION AND REIMBURSEMENT OF DISBURSEMENTS FOR THE PERIOD SEPTEMBER 1, 2010 THROUGH JULY 31, 2011**

TO:   THE HONORABLE ALBERT S. DABROWSKI
        UNITED STATES BANKRUPTCY JUDGE

Zeisler & Zeisler, P.C., (the "Applicant"), counsel to James Berman, the Chapter 7 Trustee in the administratively consolidated bankruptcy cases (the "Goldberg Bankruptcies") of debtors (the "Debtors") Michael S. Goldberg (the "Individual Case") and Michael S. Goldberg, L.L.C. (the "LLC Case"), hereby makes this application for compensation and reimbursement of disbursements (the "Application"), and in support thereof, respectfully represents:

1

I. **OVERVIEW**

1. This Application is made for the period from September 1, 2010 through July 31, 2011 (the "Fee Period").

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2). The statutory predicates for the Application are 11 U.S.C. §§ 330 and 331.

3. Annexed as **Exhibit A** is a schedule of Applicant's billable rates and the total attorney time expended during the Fee Period. Also annexed as part of **Exhibit A** are the daily time records, contemporaneously maintained by each attorney employed by Applicant, reflecting the work performed and time spent on these matters during the Fee Period by each individual lawyer. Each attorney's billable hours are set forth in increments of tenths of the hour and totaled as to each sub-matter. The sub-matters are set forth as Tabs [2-7] of **Exhibit A**. **Exhibit A** also contains a schedule of Applicant's expenses and disbursements for which Applicant seeks reimbursement (Tab 8).

4. Approximately one year ago, Applicant filed its First Interim Fee Application in the amount of $619,779.77 ($597,346.00 in fees and $22,433.77 in expenses) which was approved by the Bankruptcy Court and paid. This is Applicant's Second Interim Fee Application

for the subsequent eleven-month period. Compensation for the Fee Period is requested in the amount of $2,042,276.00 representing 6,548.07 hours worked during the Fee Period by Applicant's attorneys, excluding the Trustee, James Berman. The total blended hourly rate for the attorneys who worked on the Goldberg Bankruptcies is $312.00 per hour. In addition to its fees, Applicant seeks $113,604.17 for reimbursement of out-of-pocket disbursements incurred during the Fee Period. These expenses are set forth on Tab 8 on <u>Exhibit A</u>.

5. By the hearing date on this Application, the Trustee estimates he will have recovered through Applicant's assistance at least $6- $7 million of money and other property[1]. These recoveries are in addition to obtaining over $1 million of waived claims against the estates and obtaining numerous assignments from settling defendants of substantial claims against third parties which may also provide significant future value.

6. As more fully explained below, Applicant is voluntarily waiving any compensation for over $220,000 of attorney time during the Fee Period. Additionally, because Applicant spent substantial time during the Fee Period advancing the two largest actions owned by the estates and most of the anticipated recovery on those actions will be in the future (and is therefore not included in the $6-7 million recovery thus far), Applicant has agreed to a "hold back" of 10% (approximately $200,000) of its fees until further order of the Bankruptcy Court.

---

[1] The Trustee's estimate is based on current recoveries and settlements that are either approved by the Bankruptcy Court and awaiting payment or agreed to and awaiting approval from the Bankruptcy Court.

7. **Exhibit A** is divided into sub-matters (Tabs 1-7) that reflect the major areas of work performed during the Fee Period, with the overwhelming majority of Applicant's time spent in connection with avoidance actions and other recovery litigation.

8. Tab 1 of **Exhibit A** is the total time and fee hours spent on this matter by the Trustee and by Applicant's attorneys (other than the Trustee) whose time Applicant is not charging to these estates. All of the Trustee's time, regardless of whether he was providing legal services or performing administrative Trustee duties, was not charged to these estates and is separately accounted for in Tab 1 of **Exhibit A** to this Application.

9. Applicant submits that it erred on the side of not billing for legal services that could have been charged to these estates as reflected in Tab 1 of **Exhibit A**. This amounts to a reduction of billable time to these estates of $121,605.25 (exclusive of the Trustee's time). Applicant will not seek any compensation for the services set forth on Tab 1, other than the Trustee's commission pursuant to 11 U.S.C. § 326(a) at a future date.

10. In addition, the attorney time expended by Applicant on the sub-matters set forth in Tab 6 and Tab 7 (Claims Analysis/Administration and Criminal Matters) is also not being charged to the estates, reflecting an additional $89,558.50 of attorney time during the Fee Period for which Applicant seeks no compensation. Finally, there was significant attorney time recorded in Tab 2 (Preference and Fraudulent Conveyance Litigation) that was not charged to the

estates.  For example, three of Applicant's attorneys participated in court on each day during a five-day trial held in June, 2011 on the largest claim held by the Trustee against multiple defendants.  Applicant is seeking compensation for only two attorneys on each day of trial.  All time entries that are not being charged to the estates in the Preference and Fraudulent Conveyance Litigation sub-matter are also included in Tab 1 as non-billable time.

11. In sum, Applicant has made voluntary reductions of over $220,000 of its attorney time spent on the Goldberg Bankruptcies during the Fee Period in addition to agreeing to a "holdback" of an additional 10% (approximately $200,000).

12. Given the size and complexity of this case, the level of services rendered, the results achieved thus far (as more fully-explained below), the over $220,000 of waived attorney time and Applicant's voluntary 10% hold back, Applicant respectfully submits that the compensation requested is fair and reasonable.

II. **HISTORY OF THE GOLDBERG BANKRUPTCIES AND THE GOLDBERG SCHEME**

13. The Goldberg Bankruptcies were commenced as involuntary chapter 7 cases pursuant to petitions filed against the Debtors on November 18, 2009.  These petitions were filed by a group of creditors who had sued Mr. Goldberg in state court for fraud arising out of what has now been admitted and determined to be a classic and pure Ponzi Scheme with no legitimate business activity whatsoever (the "Goldberg Scheme").  Mr. Goldberg has admitted this in his

Plea Agreement which was accepted by the District Court and incorporated in its Judgment and Order of Restitution.

14. The Debtors consented to the entry of orders for relief in the Bankruptcy Court on November 24, 2009. The Trustee was elected on January 7, 2010 and began his duties on that date. The Trustee filed a Motion to Retain Applicant on January 14, 2010 and the order authorizing Applicant's retention entered on January 22, 2010, nunc pro tunc to January 7, 2010. A copy of the order authorizing Applicant's retention as counsel to the Trustee is attached hereto as **Exhibit B**.

III. **SUMMARY OF SIGNIFICANT ACTIVITIES AND RECOVERIES**

15. During the Fee Period, Applicant performed all of the legal services necessary to assist the Trustee in his duties under the Bankruptcy Code including:

(a) Investigating the circumstances surrounding the Goldberg Scheme;
(b) Investigating, commencing and prosecuting various clawback actions designed to recover preferences, fraudulent conveyances and other transfers for the benefit of creditors of the estates, virtually all of whom are also victims of the Goldberg Scheme;
(c) Identifying, recovering and liquidating property of the estates;
(d) Investigating and analyzing filed proofs of claim and other claims against the estates;
(e) Investigating causes of action against third parties which might lead to additional recoveries for creditors/victims of the Goldberg Scheme.
(f) Working closely with the federal authorities who were prosecuting Mr. Goldberg, including obtaining information critical to the prosecution of avoidance actions as well as advising and assisting the Trustee in

        responding to the request that he became the Temporary Criminal Receiver.

(g) Advising the Trustee on various legal issues related to the Goldberg Scheme and bankruptcy and Ponzi scheme law generally.

(h) Commencing and prosecuting numerous adversary proceeding, many of which have involved extensive discovery, legal research, contested motions, prejudgment remedy proceeding, trials and other court hearings.

(i) Settling numerous adversary proceedings.

16. In connection with the foregoing tasks undertaken by Applicant, Applicant has commenced over one hundred and thirty (130) lawsuits and is preparing to file substantial additional actions. During the Fee Period, Applicant prosecuted through trial (including post-trial briefing) the largest recovery action (in terms of dollars) owned by the Trustee (the "Malley/LaBonte Action") seeking the return of false profits in the amount of approximately $10 million and re-paid "capital" in the amount of approximately $4 million from a group of over 10 defendants who included (in the Trustee's view) some of the largest "Feeders" to the Goldberg Scheme[2].

17. Applicant also commenced and continues to prosecute the second largest avoidance action owned by the estates (the "AUG Action") seeking to recover over $11 million of preferential and/or fraudulent transfers from over 40 defendants whose investments in the Goldberg Scheme were paid off largely with the ninety-day period prior to the Petition Date (the "AUG Action"). Applicant has recently prepared and filed a Motion for Partial Summary

---

[2] While certain defendants in the Malley/LaBonte action conceded the Trustee's claims and/or stipulated to judgment, other defendants dispute the Trustee's claims and characterizations. The Bankruptcy Court has reserved decision.

Judgment on the preference count in the AUG Action which seeks to recover almost $10 million of the Trustee's claim.

18. During the Fee Period, Applicant negotiated voluntary pre-judgment remedies from almost all of the over 40 defendants in the AUG Action and prosecuted a motion to obtain pre-judgment remedies against the few non-consenting defendants. Applicant also successfully defended the defendants' motion to dismiss and their motion to have the AUG Action transferred the District Court.

19. Finally, Applicant negotiated and obtained a voluntary payment of all of the false profits received by one group of defendants in the AUG Action in the amount of approximately $740,000 and has obtained settlement agreements for nearly the full amount of the Trustee's claims against three other defendants totaling an additional $200,000.

20. In addition to the Malley/LaBonte and the AUG Actions, Applicant has or will commence and continue to prosecute and/or resolve short of litigation many other significant clawback actions for the Trustee, with a collective face value of over $10 million, net of the approximately $6.5 million of money and other property already recovered.

21. Applicant also continues to investigate claims against third parties which could result in additional recovery to these estates unassociated with the recovery of fraudulent and/or preferential pre-petition transfers by the Debtors.

22. Finally, Applicant has assisted and continues to assist the Trustee with the liquidation of property of the estate other than avoidance/recovery actions and anticipates that the Trustee will obtain substantial sums in connection therewith as well.

IV. **APPLICANT'S SPECIFIC SERVICES DURING THE FEE PERIOD**

23. Below are the specific sub-areas (Tabs 2-7) of **Exhibit A** on which Applicant has provided services during the Fee Period. **Exhibit A** sets forth the specific detail and includes the amount of time spent in tenths of the hour by each attorney who provided work in connection with each particular sub-matter. At the end of each sub-matter identified in **Exhibit A** is a schedule showing each attorney who provided time on that particular sub-matter, the total amount of time expended and the attorney's billing rate.

    A. **PREFERENCE AND FRAUDULENT CONVEYANCE LAWSUITS – TAB 2**

24. This sub-matter is where the bulk of Applicant's time was spent and, as previously discussed, involves work on over 130 adversary proceedings including the investigation and participation in the five-day trial (and post trial briefing) on the $14 million Malley/LaBonte Action.

25. Applicant's additional work in connection with preference/fraudulent conveyance litigation involved, among other things, researching and analyzing the evolving and growing body of law within this district, this circuit and nationwide regarding various Ponzi scheme

issues including: good faith; inquiry notice and the satisfaction of the duty associated therewith; forfeiture law; the ordinary course of business and other preference defenses in a Ponzi scheme, the "Ponzi scheme presumption", "value" under 11 U.S.C. §§§ 547, 548, 550 and state law; *in pari-delicto* issues, confidentiality issues, the "conduit" and "collapsing" doctrines, aiding and abetting a Ponzi scheme and many other legal issues surrounding the liquidation of assets in the context of a large Ponzi scheme which involved over $140 million in transfers.

26. Applicant was also involved in the drafting prosecution, defense, and/or negotiation of: Complaints; Applications for prejudgment remedies; Prejudgment remedy orders and agreements; Sworn declarations and other disclosures designed to ensure fair and appropriate settlements; Legal memoranda; Motions for summary judgment; Motions to dismiss; Applications for 2004 examinations; Settlement agreements; Restraining orders; Affidavits; Turnover agreements; and various other pleadings, hearings, proceedings and documents and discovery.

27. Applicant worked with the Trustee's forensic accountants and the Debtors to prepare for contested prejudgment remedy hearings and trials, including assembling evidence necessary to establish the over $140 million of transfers in connection with the Goldberg Scheme. Finally, Applicant spent significant time investigating additional information supplied

by the Federal Government, the Debtors, numerous defendants and third parties in connection with asserted defenses to the Trustee's recovery actions.

28.     As set forth in Tab 2 of **Exhibit A**, Applicant is seeking $1,876,133.50 of fees in connection with work related to Preference and Fraudulent Conveyance Litigation. A specific description of all the activities undertaken by Applicant in connection with preference/fraudulent conveyance and other recovery lawsuits is set forth in Tab 2 of **Exhibit A**.

        **B.**     **THIRD PARTY CLAIMS INVESTIGATION/LITIGATION-TAB 3**

29.     During the Fee Period, Applicant continued to investigate potential claims against third parties. This work included contested hearings on the Trustee's ability to obtain discovery from financial institutions as well as briefing and participating in oral argument on these issues. Additionally, Applicant was involved in defending the estates' ownership of certain claims brought by a group of creditors of the estates against certain defendants in the AUG Action. Applicant successfully negotiated a standstill on these competing claims and is prepared to prosecute an injunction and/or seek other relief in connection with protecting assets of the estates from illegal encroachment. As set forth in Tab 3, Applicant seeks $129,474.50 in connection with third party litigation.

30.     A more detailed description of activities in connection with third party claims investigation/litigation is set forth in Tab 3 of **Exhibit A**.

### C.  PROPERTY OF THE ESTATE LEGAL ISSUES-TAB 4

31. This included analyzing the Trustee's authority to sell the Debtor's and a co-owner's interest in a liquor store; negotiating and commencing litigation against the co-owner, including 2004 examinations of various parties; analyzing and preparing to prosecute turnover actions in connection with prejudgment remedies and other Goldberg Scheme cash frozen prior to the Petition Date; analyzing and asserting the Trustee's ability to force the sale of jointly owned assets among the Debtor and various individuals; and research analysis and negotiation of various agreements regarding securing, taking possession of and/or liquidating property of these estates.

32. As set forth in Tab 4 of **Exhibit A** Applicant is seeking $27,888.50 of fees in connection with its work related to property of the estate legal issues.

33. A more detailed description of activities in connection with property of the estate legal issues is set forth in Tab 4 of **Exhibit A**.

### D.  BANKRUPTCY/PONZI SCHEME LEGAL ISSUES-TAB 5

34. Immediately upon his election, the Trustee began investigating allegations that the Debtors together had operated a Ponzi scheme for over ten (10) years. The Trustee and his counsel met with Mr. Goldberg and his criminal and bankruptcy counsel and established protocol and a relationship whereby Mr. Goldberg revealed significant detail regarding how he operated

and funded the Goldberg Scheme and who its largest beneficiaries were. In addition, Applicant was able to procure Mr. Goldberg's agreement to waive his attorney/client privilege. The Trustee was thus able to gain significant information early in the case which has been beneficial in prosecuting various lawsuits to recover preferences and fraudulent conveyances. Equally if not more importantly, the cooperation and assistance of the United States Attorney's Office (the "AUSA") and the Federal Bureau of Investigation (the "FBI") was offered and accepted very early in the Goldberg Bankruptcies. The Trustee and Applicant were given access to all of Mr. Goldberg's documentary evidence and electronic data which Applicant is continuing to analyze.

35. Applicant's work in this regard during the Fee Period included negotiation, drafting and prosecuting a motion in bankruptcy court obtaining a consensual waiver of Mr. Goldberg's bankruptcy discharge; continued meetings with the FBI and the AUSA; and addressing issues surrounding the Debtor's tax returns.

36. As set forth in Tab 5 of **Exhibit A**, the Applicant is seeking $8,304.50 in connection with legal work relating to bankruptcy/Ponzi scheme legal issues in connection with the Goldberg Bankruptcies and the Goldberg Scheme generally, including the intersection of Ponzi scheme and bankruptcy law.

37. A more detailed description of activities in connection with general bankruptcy legal issues is set forth in Tab 5 of **Exhibit A**.

### E.   CLAIMS ANALYSIS/ADMINISTRATION – TAB 6

38.   During the Fee Period, Applicant spent $61,922.50 of attorney time analyzing and administering claims against the estates. Applicant is not charging the estate for any of this time. A detailed description of Applicant's work in connection with Claims Analysis/Administration is set forth on Tab 8.

### F.   CRIMINAL MATTERS – TAB 7

39.   During the Fee Period, Applicant spent $27,636.00 of attorney time on criminal matters. Applicant is not charging the estates for any of this time. A detailed description of Applicant's work in connection with criminal issues is set forth on Tab 9.

## V.   DISBURSEMENTS – TAB 8

40.   During the Fee Period, in the course of its representation of the Trustee, Applicant incurred out-of-pocket expenses in the amount of $113,604.17. Applicant submits that these disbursements were necessary and reasonable in amount. Due to the number of lawsuits in this case, and the number of creditors and other parties in interest receiving notices and pleadings, Applicant incurred substantial costs, including but not limited to, photocopying, online research and distributing voluminous materials. Given the amount of litigation Applicant has been engaged with court reporters' fees constitute a significant portion of Applicant's expenses. Applicant has also made extensive distributions of documents to parties in interest, their

representatives and counsel, and many other parties in interest who either were part of negotiations or were actively participating on matters being submitted to the Court on a regular basis. Those distributions included pleadings, proposed agreements and proposed orders. Due to the expedited nature of many of these items, the distributions were often sent by telecopier and overnight mail. In addition, because many of the defendants in these actions reside out of the state, Applicant had significant out of pocket expenses for attorney travel and lodging.

WHEREFORE, Applicant respectfully requests that this court enter an Order: (i) awarding the Applicant compensation for the period September, 1 2010 through and including July 31, 2011 in the amount of $2,042,276.00, for services rendered by Applicant as counsel to James Berman, the Chapter 7 Trustee; (ii) requiring the Trustee to hold back 10% of that amount

from payment to Applicant subject to further order of the Bankruptcy Court; (iii) approving the reimbursement of expenses incurred and expended during the Fee Period in the amount of $113,604.17; and (iv) granting such other and further relief as this Court deems just and proper.

Dated this 4th day of November, 2011 at Bridgeport, Connecticut.

>JAMES BERMAN, CHAPTER 7 TRUSTEE FOR THE ESTATES OF MICHAEL S. GOLDBERG, L.L.C. AND MICHAEL S. GOLDBERG
>
>By: __/ s / Jed Horwitt__
>Jed Horwitt (ct04778)
>Zeisler & Zeisler, P.C.
>558 Clinton Avenue
>Bridgeport, CT 06605
>Tel. 203-368-4234
>Fax 203-367-9678
>Email: jhorwitt@zeislaw.com