**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

------------------------------------------------------X
                                                                :    Chapter 7
In re:                                             :
                                                      :    Substantively Consolidated
MICHAEL S. GOLDBERG, LLC         :    LEAD CASE No. 09-23370 (ASD)
MICHAEL S. GOLDBERG                :    MEMBER CASE No. 09-23371 (ASD)
                                                      :
        Debtors.                           :
                                                      :
------------------------------------------------------X

**INTERIM FEE APPLICATION OF ZEISLER & ZEISLER, P.C.,
COUNSEL TO THE CHAPTER 7 TRUSTEE, SEEKING COMPENSATION AND
REIMBURSEMENT OF DISBURSEMENTS FOR THE PERIOD
AUGUST 1, 2011 THROUGH JULY 31, 2012**

TO:    THE HONORABLE ALBERT S. DABROWSKI
         UNITED STATES BANKRUPTCY JUDGE

       Zeisler & Zeisler, P.C., (the "Applicant"), counsel to James Berman, the Chapter 7 Trustee in the substantively consolidated bankruptcy cases (the "Goldberg Bankruptcies") of debtors (the "Debtors") Michael S. Goldberg (the "Individual Case") and Michael S. Goldberg, L.L.C. (the "LLC Case"), hereby makes this application for compensation and reimbursement of disbursements (the "Application"), and in support thereof, respectfully represents:

I. **OVERVIEW**

1. This Application is made for the period from August 1, 2011 through July 31, 2012 (the "Fee Period").

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2). The statutory predicates for the Application are 11 U.S.C. §§ 330 and 331.

3. Annexed as part of **Exhibit A** is a schedule of Applicant's billable rates and the total attorney time expended on all matter during the Fee Period. Also annexed as part of **Exhibit A** are the daily time records, contemporaneously maintained by each attorney employed by Applicant, reflecting the work performed and time spent on these matters during the Fee Period by each individual lawyer. Each attorney's billable hours are set forth in increments of tenths of the hour and totaled as to each matter. The matters are set forth as Tabs [1-5] of **Exhibit A**. **Exhibit A** also contains a schedule of Applicant's expenses and disbursements for which Applicant seeks reimbursement (Tab 6). Finally, **Exhibit A** contains a schedule annexed to Tab 1 (Preference and Fraudulent conveyance Litigation) which sets forth the amount of attorneys' fees expended on each adversary proceeding Applicant worked during the Fee Period.

Applicant respectfully submits that this schedule illustrates that the resources allocated by Applicant to each adversary proceeding were reasonable and appropriate.

4. This is Applicant's Third Interim Fee Application. Compensation for the Fee Period is requested in the amount of $2,062,172.23 representing 7,293 hours worked during the Fee Period by Applicant's attorneys, excluding the Trustee, James Berman. The total blended hourly rate for the attorneys who worked on the Goldberg Bankruptcies is $282.00 per hour. In addition to its fees, Applicant seeks $148,826.97 for reimbursement of out-of-pocket disbursements incurred during the Fee Period. These expenses are set forth on Tab 6 of **Exhibit A**.

5. By the hearing date on this Application, the Trustee will have recovered, through Applicant's assistance, over $14 million of money and other property for the Estate in the two and one-half years he has been pursuing recoveries. These recoveries are in addition to obtaining millions of dollars of waived claims against the estates and numerous assignments of claims against third parties from settling defendants which may provide significant future value. Most importantly, the Trustee has recently obtained this Court's approval to make a $9,000,000 First Interim Distribution to the holders of allowed unsecured claims which will provide an initial 25-30% dividend to the creditor/victims of the Goldberg Scheme. The Trustee believes there will be additional dividends to unsecured creditors in the future.

6.      As more fully explained below, Applicant is voluntarily waiving fees of almost $500,000 of attorney time during the Fee Period.  These waived fees are comprised of all of the Trustee's legal work and that of other attorneys' time in Tab 5, all of the attorney time contained in Tab 4 (Claims Administration & Objections) and the line items in Tab 1 (Preference and Fraudulent Conveyance Litigation) that are marked with an "NC" for "No Charge" and totaled at the end thereof.  Additionally, Applicant has agreed with the United States Trustee to a "hold back" of 10% (approximately $200,000) of its fees until the ultimate dividend to unsecured creditors is determined and subject to further order of the Bankruptcy Court.

7.      **Exhibit A** is divided into matters (Tabs 1-6) which reflect the major areas of work performed during the Fee Period, with the overwhelming majority of Applicant's time spent in connection with preference and fraudulent conveyance actions and other recovery litigation.

8.      Tab 5 of **Exhibit A** is the total time and fee hours spent on the Goldberg bankruptcy by the Trustee and certain time spent by Applicant's attorneys (other than the Trustee) whose time Applicant is deeming "administration" and not charging to these estates. All of the Trustee's time, regardless of whether he was providing legal services or performing administrative Trustee duties, was not charged to the Estate and is separately accounted for in Tab 5 of **Exhibit A** to this Application.

9. Applicant submits that it erred on the side of not billing for legal services that could have been charged to the Estate as reflected in Tabs 1, 4 and 5 of **Exhibit A**. The total amount of waived attorneys' fees in Tab 5, exclusive of the Trustee's time, is $70,000. Applicant will not seek any compensation for any of the services set forth on Tab 5, other than the Trustee's commission pursuant to 11 U.S.C. § 326(a) at a future date.

10. In addition, significant amounts of attorney time expended by Applicant on the matter in Tab 1 (Preference and Fraudulent Conveyance Litigation) and all of the attorney time expended on the matter on Tab 4 (Claims Analysis & Objections) are also not being waived to the Estate, reflecting an additional $315,000 of attorney time during the Fee Period for which Applicant seeks no compensation.

11. In sum, Applicant has made voluntary reductions of $385,000 of its attorney time in addition to the Trustee's legal work spent on the Goldberg Bankruptcy during the Fee Period and agreed to a "holdback" of over $200,000 from its current fees.

12. Given the results achieved thus far including a meaningful First Interim Distribution to unsecured creditors; the recovery of over $8 million during the Fee Period; millions of dollars of judicially denied and voluntarily waived claims obtained by Applicant; resolution of the largest adversary proceedings and the prosecution to resolution of a total of over

120 of 200 lawsuits, Applicant respectfully submits that the compensation requested is very fair and reasonable.

## II. HISTORY OF THE GOLDBERG BANKRUPTCIES AND THE GOLDBERG SCHEME

13. The Goldberg Bankruptcies were commenced as involuntary chapter 7 cases pursuant to petitions filed against the Debtors on November 18, 2009. These petitions were filed by a group of creditors who had sued Mr. Goldberg in state court for fraud arising out of what has now been admitted and determined to be a classic and pure Ponzi Scheme with no legitimate business activity whatsoever (the "Goldberg Scheme"). Mr. Goldberg has admitted this in his Plea Agreement which was accepted by the District Court and incorporated in its Judgment and Order of Restitution.

14. The Debtors consented to the entry of orders for relief in the Bankruptcy Court on November 24, 2009. The Trustee was elected on January 7, 2010 and began his duties on that date. The Trustee filed a Motion to Retain Applicant on January 14, 2010 and the order authorizing Applicant's retention entered on January 22, 2010, nunc pro tunc to January 7, 2010.

## III. SUMMARY OF SIGNIFICANT ACTIVITIES AND RECOVERIES

15. During the Fee Period, Applicant performed all of the legal services necessary to assist the Trustee in his duties under the Bankruptcy Code including:

(a) Investigating the circumstances surrounding the Goldberg Scheme;

    (b)    Investigating, commencing and prosecuting various clawback actions designed to recover preferences, fraudulent conveyances and other transfers for the benefit of creditors of the estates, virtually all of whom are also victims of the Goldberg Scheme;

    (c)    Identifying, recovering and liquidating property of the estates;

    (d)    Investigating, analyzing and objecting to filed proofs of claim and other claims against the estates;

    (e)    Investigating causes of action against third parties which might lead to additional recoveries for creditors/victims of the Goldberg Scheme.

    (f)    Advising the Trustee on various legal issues related to the Goldberg Scheme and bankruptcy and Ponzi scheme law generally.

    (g)    Commencing and prosecuting numerous adversary proceeding, many of which have involved extensive discovery, legal research, contested motions, prejudgment remedy proceeding, trials and other court hearings.

    (h)    Settling numerous adversary proceedings, including the second largest lawsuit in the Estate for a net recovery of almost $7 million.

16. In connection with the foregoing tasks undertaken by Applicant, Applicant has commenced approximately 200 adversary proceedings. During the Fee Period, Applicant settled the second largest adversary proceeding (in terms of dollars) owned by the Estate (the "AUG Action") which sought the disgorgement of false profits in the amount of approximately $2 million and preferentially and/or fraudulently repaid "capital" in the amount of approximately $9 million from a group of over 40 defendants who included (in the Trustee's view) some of the largest "Feeders" to the Goldberg Scheme. Applicant was able to negotiate and obtain an attractive settlement, with the help of a very diligent and talented mediator, which netted the Estate a total of almost $7 million dollars in this case and resulting claims waivers of over $3 million. The AUG settlement was the result, in part, of Applicant having prosecuted and

consensually obtained pre-judgment remedies against most of the 40 defendants and having prepared and prosecuted a $10 million motion for summary judgment, which, if successful, would have required the defendants to disgorge most of their false profits and "capital".

17. In addition to the AUG Action, Applicant has settled and/or prosecuted to judgment over 120 of the 200 adversary proceedings brought, and has received millions of dollars in connection with these settlements and judgments. Importantly, Applicant continues to prosecute the largest adversary proceeding in this Estate post-trial as well as the remaining clawback actions for the Trustee, which have a collective face value of over $7 million.

18. Applicant continues to investigate claims against third parties which could result in additional recovery to these estates unassociated with the recovery of fraudulent and/or preferential pre-petition transfers by the Debtors.

19. Finally, Applicant has assisted and continues to assist the Trustee with the liquidation of property of the Estate other than avoidance/recovery actions and anticipates that the Trustee will obtain additional sums in connection therewith as well.

## IV. APPLICANT'S SPECIFIC SERVICES DURING THE FEE PERIOD

20. Below are the specific matters (Tabs 1-5) of **Exhibit A** on which Applicant has provided services during the Fee Period. **Exhibit A** sets forth the specific detail and includes the amount of time spent in tenths of the hour by each attorney who provided work in connection

with each particular matter. At the end of each sub-matter identified in **Exhibit A** is a schedule showing each attorney who provided time on that particular matter, the total amount of time expended and the attorney's billing rate.

      A.      **PREFERENCE AND FRAUDULENT CONVEYANCE LAWSUITS – TAB 1**

21.     This matter is where the bulk of Applicant's time was spent and, as previously discussed, involves work on approximately 200 adversary proceedings, including the post-trial briefing and contested motions in connection with the $12 million Malley/LaBonte Action .

22.     Applicant's additional work in connection with preference/fraudulent conveyance litigation involved, among other things, researching and analyzing the evolving and growing body of law within this district, this circuit and nationwide regarding various Ponzi scheme issues including: good faith; inquiry notice and the satisfaction of the duty associated therewith; forfeiture law; the ordinary course of business and other preference defenses in a Ponzi scheme, the "Ponzi scheme presumption", "value" under 11 U.S.C. §§§ 547, 548, 550 and state law; *in pari-delicto* issues, confidentiality issues, the "conduit" and "collapsing" doctrines, aiding and abetting a Ponzi scheme and many other legal issues surrounding the liquidation of assets in the context of a large Ponzi scheme which involved over $140 million in transfers.

23.     Applicant was also involved in the drafting prosecution, defense, and/or negotiation of: Complaints; Applications for prejudgment remedies; Prejudgment remedy orders

and agreements; Sworn declarations and other disclosures designed to ensure fair and appropriate settlements; Legal memoranda; Motions for summary judgment; Motions to dismiss; Applications for 2004 examinations; Settlement agreements; Restraining orders; Affidavits; Turnover agreements; and various other pleadings, hearings, proceedings and documents and discovery.

24. Applicant worked with the Trustee's forensic accountants to prepare for contested prejudgment remedy hearings and trials, including assembling evidence necessary to establish the over $140 million of transfers in connection with the Goldberg Scheme. Finally, Applicant spent significant time investigating additional information supplied by the Federal Government, the Debtors, numerous defendants and third parties in connection with asserted defenses to the Trustee's recovery actions.

25. As set forth in Tab 1 of **Exhibit A**, Applicant is seeking $1,809,655.98 of fees in connection with work related to Preference and Fraudulent Conveyance Litigation. A specific description of all the activities undertaken by Applicant in connection with preference/fraudulent conveyance and other recovery lawsuits is set forth in Tab 1 of **Exhibit A**. Additionally, Applicant has attached a schedule to Tab 1 showing how much attorney fees were expended on each and every adversary proceeding Applicant worked on during the Fee Period.

### B.    THIRD PARTY CLAIMS INVESTIGATION/LITIGATION-TAB 2

26. During the Fee Period, Applicant continued to investigate potential claims against third parties. This work included research on the Trustee's ability to obtain discovery from financial institutions as well as briefing and participating in oral argument issues regarding claims against parties other than investors. Additionally, Applicant remained involved in defending the estates' ownership of certain claims brought by a group of creditors of the estates against certain defendants in the AUG Action. As set forth in Tab 2, Applicant seeks $45,873.75 in connection with third party litigation.

27. A more detailed description of activities in connection with third party claims investigation/litigation is set forth in Tab 2 of **Exhibit A**.

### C.    PROPERTY OF THE ESTATE LEGAL ISSUES – TAB 3

28. This included obtaining authority to sell the Debtor's and a co-owner's interest in a liquor store and closing that transaction; prosecuting and settling litigation against the co-owner, including 2004 examinations of various parties; analyzing and prosecuting turnover and contempt actions in connection with prejudgment remedies and other Goldberg Scheme cash which certain defendants attempted to hide from the Trustee or to improperly dissipate; analyzing and asserting the Trustee's ability to force the sale of jointly owned assets among the Debtor and various individuals; research analysis and negotiation of various agreements

regarding securing, taking possession of and/or liquidating property of these estates; and successfully prosecuting a Motion for Substantive Consolidation which has resulted in an order of this Court collapsing the Michael S. Goldberg, LLC and Michael S. Goldberg bankruptcy estates into a single Estate.

29.     As set forth in Tab 3 of **Exhibit A** Applicant is seeking $206,642.50 of fees in connection with its work related to Property of the Estate issues.

30.     A more detailed description of activities in connection with Property of the Estate issues is set forth in Tab 3 of **Exhibit A**.

### D.     CLAIMS ANALYSIS AND OBJECTIONS – TAB 4

31.     During the Fee Period, Applicant spent $141,750.50 of attorney time analyzing and objecting to claims against the estates.  Applicant is not charging the estate for any of this time because Applicant realizes that some of it is administrative in nature and deems it appropriate to reduce the burden on the Estate and creditors in this regard.  A detailed description of Applicant's work in connection with Claims Analysis and Objections is set forth on Tab 4.

### V.     DISBURSEMENTS – TAB 6

32.     During the Fee Period, Applicant incurred out-of-pocket expenses in the amount of $148,826.97 connected mostly to prosecuting adversary proceedings.  Applicant submits that these disbursements were necessary and reasonable in amount.  Due to the number of lawsuits in

this case, and the fact that many defendants were out of state, and the number of creditors and other parties in interest receiving notices and pleadings, Applicant incurred substantial costs, including but not limited to, air travel, hotels, court reporters, photocopying, online research and distributing voluminous materials. Given the amount of litigation Applicant has been engaged in, court reporters' fees constitute a significant portion of Applicant's expenses. Applicant has also made extensive distributions of documents to parties in interest, their representatives and counsel, and many other parties in interest who either were part of negotiations or were actively participating on matters being submitted to the Court on a regular basis. Those distributions included pleadings, proposed agreements and proposed orders. Due to the expedited nature of many of these items, the distributions were often sent by telecopier and overnight mail. Because many of the defendants in these actions reside out of the state, Applicant had significant out of pocket expenses for attorney travel and lodging. Finally, Applicant has voluntarily waived over $6,000.00 of disbursements as set forth on Tab 6.

WHEREFORE, Applicant respectfully requests that this court enter an Order: (i) awarding the Applicant compensation for the period August 1, 2011 through and including July 31, 2012 in the amount of $2,062,172.23, for services rendered by Applicant as counsel to James Berman, the Chapter 7 Trustee; (ii) requiring the Trustee to hold back 10% of that amount ($206,217.22) from payment to Applicant subject to further order of the Bankruptcy Court; (iii)

approving the reimbursement of expenses incurred and expended during the Fee Period in the amount of $148,826.97; and (iv) granting such other and further relief as this Court deems just and proper.

Dated this 16th day of November, 2012 at Bridgeport, Connecticut.

>JAMES BERMAN, CHAPTER 7 TRUSTEE FOR THE ESTATES OF MICHAEL S. GOLDBERG, L.L.C. AND MICHAEL S. GOLDBERG
>
>By: \_\_/ s / Jed Horwitt_____
>Jed Horwitt (ct04778)
>Zeisler & Zeisler, P.C.
>558 Clinton Avenue
>Bridgeport, CT 06605
>Tel. 203-368-4234
>Fax 203-367-9678
>Email: jhorwitt@zeislaw.com