**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION**

-------------------------------------------------------X
:      Chapter 7
In re:                                              :
:      Substantively Consolidated
MICHAEL S. GOLDBERG, LLC          :      LEAD CASE No. 09-23370 (ASD)
MICHAEL S. GOLDBERG                :      MEMBER CASE No. 09-23371 (ASD)
:
      Debtors.                          :
:
-------------------------------------------------------X

**INTERIM FEE APPLICATION OF ZEISLER & ZEISLER, P.C.,
COUNSEL TO JAMES BERMAN, THE CHAPTER 7 TRUSTEE, SEEKING
COMPENSATION AND REIMBURSEMENT OF DISBURSEMENTS FOR THE
PERIOD AUGUST 1, 2012 THROUGH DECEMBER 31, 2013**

TO:    THE HONORABLE ALBERT S. DABROWSKI
         UNITED STATES BANKRUPTCY JUDGE

       Zeisler & Zeisler, P.C., (the "Applicant"), counsel to James Berman, the Chapter 7 Trustee in this substantively consolidated Chapter 7 bankruptcy (the "Goldberg Bankruptcy") of the debtors (the "Debtors") Michael S. Goldberg (the "Individual Case") and Michael S. Goldberg, L.L.C. (the "LLC Case"), hereby makes this application for compensation and reimbursement of disbursements (the "Application"), and in support thereof, respectfully represents:

I. **OVERVIEW**

1. This Application is for the 18-month period from August 1, 2012 through December 31, 2013 (the "Fee Period").

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2). The statutory predicates for the Application are 11 U.S.C. §§ 330 and 331.

3. Exhibit A contains the itemized time and expense entries for the Fee Period. Annexed as part of **Exhibit A** is a schedule of Applicant's billable rates and the total attorney time expended on all matters during the Fee Period. Also annexed as part of **Exhibit A** are the daily time records, contemporaneously maintained by each attorney employed by Applicant, reflecting the work performed and time spent on these matters during the Fee Period by each individual lawyer. Each attorney's billable hours are set forth in increments of tenths of the hour and totaled as to each matter. These sub-matters are set forth as Tabs [1-4] of **Exhibit A**. **Exhibit A** also contains a schedule of Applicant's expenses and other disbursements for which Applicant seeks reimbursement (Tab 5). Finally, **Exhibit A** contains a Schedule A annexed to Tab 1 (the Preference and Fraudulent Conveyance Adversary Proceeding List) which sets forth the amount of attorneys' fees expended on each individual adversary proceeding Applicant

prosecuted during the Fee Period.  Applicant respectfully submits that Schedule A to Tab 1 of Exhibit A illustrates that the resources allocated by Applicant to the various adversary proceedings prosecuted during the Fee Period were reasonable, appropriate and necessary to maximize value to the Estate.

4.      Applicant has not been compensated for any of its fees or expenses incurred after July of 2012, notwithstanding that this matter is a significant engagement for Applicant and has consumed a material portion of Applicant's resources.  Applicant has deferred this Interim Fee Application in part because Applicant wanted to ensure that the First Interim Distribution of 27.5% (the "First Distribution") was effectuated and significant additional funds were recovered and available to the Estate before Applicant sought compensation post-distribution.

5.      This is Applicant's Fourth Interim Fee Application.  Compensation for the 18-month Fee Period is requested in the amount of $1,276,945.75 representing 3,773.1 hours worked during the Fee Period by Applicant's attorneys, excluding the Trustee, James Berman. The total blended hourly rate for the attorneys who worked on the Goldberg Bankruptcy is $338.44.  In addition to its fees, Applicant seeks $42,092.04 for reimbursement of out-of-pocket disbursements incurred during the Fee Period.  These expenses are set forth on Tab 5 of **Exhibit A**.

6.As of the filing of this Application, the Trustee will have recovered, through Applicant's assistance, over $ million of money and other property for the Estate in the four years he has been pursuing recoveries. During the Fee Period, Applicant recovered a total of $2,131,000 through litigation settlements in addition to $5,750,000 collected in connection with the AUG settlement. The foregoing recoveries are in addition to Applicant obtaining millions of dollars of waived creditor claims against the estates and assignments of litigation claims against third parties from certain settling defendants, which have provided significant additional value**.**

7.On or about December 28, 2012, the Trustee made a $9,000,000 distribution to the holders of allowed unsecured claims which provided, as noted, a 27.5% dividend to the creditor/victims of the Goldberg Scheme (as defined below). The Trustee believes there may be additional dividends to unsecured creditors in the future as more particularly set forth below.

8.The Trustee is holding approximately $3.5 million of funds net of the First Distribution. The Trustee has not yet recovered on several significant adversary proceedings, by far the largest of which is potentially the most valuable asset in the Goldberg Estate: a $12,000,000 fraudulent conveyance avoidance action pending against numerous defendants. This adversary proceeding involved a two-week trial, hundreds of exhibits, many hours of witness testimony and extensive pre-trial and post-trial briefing. During the Fee Period, the Trustee was confronted with numerous attempts to frustrate his ability to secure and preserve the

property available for the judgment the Trustee hopes to obtain from that trial. Although there is no guaranty that the Trustee will ultimately prevail in this adversary proceeding, Applicant submits that the time expended on it and all the various adversary proceedings during the Fee Period was necessary, reasonable and calculated to maximize value for this Estate.

9. As more fully explained below, Applicant is not seeking compensation for fees totaling $169,886.50 of attorney time during the Fee Period. These waived fees include all of the Trustee's legal work and all the work of Applicant's attorneys that is set forth in Tab 4 (Administration) . Additionally, Applicant has agreed with the United States Trustee to a "hold back" of 10% (approximately $127,694.58) of approved fees, as it has done with respect to his previous applications subject to further order of the Bankruptcy Court.

10. **Exhibit A** is divided into sub-matters (Tabs 1-4) which reflect the areas of work performed during the Fee Period, with the overwhelming majority of Applicant's time spent in connection with prosecuting adversary proceedings for fraudulent conveyances, preferences and other recovery litigation (Tab 1).

11. Tab 4 of **Exhibit A** is the total time incurred for the Goldberg Estate by the Trustee and by Applicant's attorneys (other than the Trustee) whose fees Applicant is not charging to these estates. None of the Trustee's time throughout this entire case, regardless of

whether he was providing legal services or performing the administrative duties of a trustee has been charged to the Estate and all of it is set forth on Tab 4 of **Exhibit A** to this Application.

12. Applicant submits that it erred on the side of not billing for legal services that could have been charged to the Estate as reflected in Tabs 4 of **Exhibit A**. The total amount of waived attorneys' fees in Tab 4, inclusive of the Trustee's time, is $169,886.50. Applicant will not seek <u>any</u> compensation for any of the services set forth on Tab 4, other than the Trustee's commission pursuant to 11 U.S.C. § 326(a) at a future date. Applicant has also agreed, as noted, to a "holdback" of ten percent (10%) from its current fees, in addition to the previous hold backs.

13. Given the results achieved thus far including a 27.5% First Interim Distribution to unsecured creditors; the collection of approximately $7,881,000 during the Fee Period; the reduction of millions of dollars of judicially denied and voluntarily waived claims obtained by Applicant; and the resolution of almost all of the approximately 200 adversary proceedings prosecuted in this chapter 7 liquidation, Applicant respectfully submits that the compensation requested for the 18-month Fee Period is fair and reasonable.

## II. **HISTORY OF THE GOLDBERG BANKRUPTCIES AND THE GOLDBERG SCHEME**

14. The Goldberg Chapter 7 was commenced as two involuntary chapter 7 cases pursuant to petitions filed against the Debtors on November 18, 2009. These petitions were filed by a group of creditors who had sued Mr. Goldberg in state court for fraud arising out of what

has now been admitted and determined to be a classic and pure Ponzi Scheme with no legitimate business activity whatsoever (the "Goldberg Scheme"). Mr. Goldberg has admitted this in his Plea Agreement which was accepted by the District Court and incorporated in its Judgment and Order of Restitution.

15. The Debtors consented to the entry of orders for relief in the Bankruptcy Court on November 24, 2009. The Trustee was elected on January 7, 2010 and began his duties on that date. The Trustee filed a Motion to Retain Applicant on January 14, 2010 and the order authorizing Applicant's retention entered on January 22, 2010, <u>nunc pro tunc</u> to January 7, 2010.

### III. SUMMARY OF SIGNIFICANT ACTIVITIES AND RECOVERIES DURING THE FEE PERIOD

16. During the Fee Period, Applicant performed all of the legal services necessary to assist the Trustee in his duties under the Bankruptcy Code including:

(a) Continuing to investigate and determine the circumstances surrounding the Goldberg Scheme;
(b) Prosecuting various clawback actions designed to recover preferences, fraudulent conveyances and other transfers for the benefit of creditors of the estates, virtually all of whom are also victims of the Goldberg Scheme;
(c) Identifying, recovering and liquidating property of the estate;
(d) Investigating, analyzing and objecting to filed proofs of claim and other claims against the estates;
(e) Investigating causes of action against third parties which might lead to additional recoveries for creditors/victims of the Goldberg Scheme.
(f) Advising the Trustee on various legal issues related to the Goldberg Scheme and bankruptcy and Ponzi scheme law generally.

    (g)    Prosecuting numerous adversary proceedings, many of which have involved extensive discovery, legal research, contested motions, prejudgment remedy proceeding, trials and other court hearings.

    (h)    Settling numerous adversary proceedings, including final resolution of the second largest lawsuit in the estate which resulted in a net recovery of over $7 million.

    (i)    Performing all tasks necessary to arrange for and prosecute 27.5% distribution on all allowed unsecured claims

17.    In addition to settling the second largest adversary proceeding in this case and obtaining additional recoveries in connection with it of approximately $500,000.00 above the initial settlement (which occurred in the fall of 2012) Applicant has continued to settle and/or prosecute to judgment 195 of the approximately 200 adversary proceedings originally brought and has recovered $2,131,000.00 of additional dollars in connection with these settlements and judgments during the Fee Period. Also, during the Fee Period, Applicant continued to prosecute and protect the Trustee's potential recovery on the Estates' largest asset as well as other remaining clawback actions, which have a collective face value of over $12 million.

18.    Applicant continues to investigate claims against third parties which could result in recoveries for the estate unassociated with the recovery of fraudulent and/or preferential pre-petition transfers by the Debtors.

19.    Finally, Applicant has assisted and continues to assist the Trustee with the liquidation of property of the Estate other than avoidance/recovery actions and anticipates that the Trustee will obtain additional sums in connection therewith as well.

## IV. APPLICANT'S SPECIFIC SERVICES DURING THE FEE PERIOD

20. Below are the specific matters (Tabs 1-4) of **Exhibit A** on which Applicant has provided services during the Fee Period. **Exhibit A** sets forth the specific detail and includes the amount of time spent in tenths of the hour by each attorney who provided work in connection with each particular matter. At the end of each sub-matter identified in **Exhibit A** is a schedule showing each attorney who provided time on that particular matter, the total amount of time expended and the attorney's billing rate.

### A. PREFERENCE AND FRAUDULENT CONVEYANCE LAWSUITS – TAB 1

21. This sub-matter is where the bulk of Applicant's time was spent and, as previously discussed, includes the resolution of most of the remaining adversary proceedings commenced in this bankruptcy case, including final settlement with all defendants in the "AUG" proceeding.

22. Applicant's additional work in connection with preference/fraudulent conveyance litigation involved, among other things, researching and analyzing the continuously evolving and growing body of law within this district, this circuit and the Nation regarding various Ponzi scheme clawback issues including: good faith; inquiry notice and the satisfaction of the duty associated therewith; forfeiture law; the ordinary course of business and other preference defenses in a Ponzi scheme, the "Ponzi scheme presumption", "value" under 11 U.S.C. §§§ 547,

9

548, 550 and state law; *in pari-delicto* issues, confidentiality issues, the "conduit" and "collapsing" doctrines, aiding and abetting a Ponzi scheme and many other legal issues surrounding the liquidation of assets in the context of a large Ponzi scheme which involved over $140 million in transfers. Much of this work is reflected in the "General" subcategory on Schedule A to Tab 1 of Exhibit A.

23. Applicant was also involved in the drafting prosecution, defense, and/or negotiation of: Complaints; Applications for prejudgment remedies; Prejudgment remedy orders and agreements; Sworn declarations and other disclosures designed to ensure fair and appropriate settlements; Legal memoranda; Motions for summary judgment; Motions to dismiss; Applications for 2004 examinations; Settlement agreements; Restraining orders; Affidavits; Turnover agreements; and various other pleadings, hearings, proceedings and documents and discovery.

24. Applicant worked with the Trustee's forensic accountants to prepare for contested hearings and trials, including assembling evidence necessary to establish the transfers for every adversary proceeding prosecuted by Applicant. Finally, Applicant spent significant time investigating additional information supplied by the Federal Government, the Debtors, numerous defendants and third parties in connection with asserted defenses to the Trustee's recovery actions.

25. As set forth in Tab 1 of **Exhibit A**, Applicant is seeking $1,211,377.75 of fees in connection with work related to Preference and Fraudulent Conveyance Litigation. A specific description of all the activities undertaken by Applicant in connection with preference/fraudulent conveyance and other recovery lawsuits is set forth in Tab 1 of **Exhibit A**. Additionally, Applicant has attached Schedule A to Tab 1 showing how much attorney fees were expended on each adversary proceeding Applicant worked on during the Fee Period.

   **B.**  **PROPERTY OF THE ESTATE LEGAL ISSUES – TAB 2**

26. This included prosecuting contested turnover and contempt actions to protect the Trustee's prejudgment remedies and security for judgments which certain defendants have attempted to hide from the Trustee or improperly dissipate; analyzing and asserting the Trustee's ability to force the sale of jointly owned assets among the Debtor and various individuals; research analysis and negotiation of various agreements regarding securing, taking possession of and/or liquidating property of these estates; and marketing the sale of certain real property owned by the Estate.

27. As set forth in Tab 2 of **Exhibit A** Applicant is seeking $15,018.50 of fees in connection with its work related to Property of the Estate issues. A more detailed description of activities in connection with Property of the Estate issues is set forth in Tab 3 of **Exhibit A**.

### C. CLAIMS OBJECTIONS AND ANALYSIS – TAB 3

28. In order to facilitate the First (27.5%) Interim Distribution to unsecured creditors, during the Fee Period Applicant spent $50,549.50 of attorney time analyzing and objecting to claims against the estates. A detailed description of Applicant's work in connection with Claims Objections and Analysis is set forth on Tab 3.

### V. ADMINISTRATION – TAB 4

29. Tab 4 sets forth all of the Trustee's time, both legal and administrative, and the attorney time of various of Applicant's attorneys that is not being charged to the Estate. As previously stated, Applicant is seeking no compensation for $169,886.50 of attorney time and of the Trustee's time as set forth in Tab 4 other than the Trustee's commission at a later date.

### VI. DISBURSEMENTS – TAB 5

30. During the Fee Period, Applicant incurred out-of-pocket expenses in the amount of $42,032.04 connected mostly to prosecuting adversary proceedings. Applicant submits that these disbursements were necessary and reasonable in amount. Due to the number of lawsuits in this case, and the fact that many defendants were out of state, and the number of creditors and other parties in interest receiving notices and pleadings, Applicant incurred substantial costs, including but not limited to, air travel, hotels, court reporters, photocopying, online research and distributing voluminous materials. Given the amount of litigation Applicant has been engaged

in, court reporters' fees constitute a significant portion of Applicant's expenses. Applicant has also made extensive distributions of documents to parties in interest, their representatives and counsel, and many other parties in interest who either were part of negotiations or were actively participating on matters being submitted to the Court on a regular basis. Those distributions included pleadings, proposed agreements and proposed orders. Due to the expedited nature of many of these items, the distributions were often sent by telecopier and overnight mail. Because many of the defendants in these actions reside out of the state, Applicant had significant out of pocket expenses for attorney travel and lodging.

WHEREFORE, Applicant respectfully requests that this court enter an Order: (i) awarding the Applicant compensation for the period August 1, 2012 through and including December 31, 2013 in the amount of $1,276,945.75, for services rendered by Applicant as counsel to James Berman, the Chapter 7 Trustee; (ii) requiring the Trustee to hold back 10% of that amount ($127,694.58) from payment to Applicant subject to further order of the Bankruptcy

Court; (iii) approving the reimbursement of expenses incurred and expended during the Fee Period in the amount of $42,092.04; and (iv) granting such other and further relief as this Court deems just and proper.

Dated this 7th day of March, 2014 at Bridgeport, Connecticut.

                                       JAMES BERMAN, CHAPTER 7 TRUSTEE FOR THE ESTATES OF MICHAEL S. GOLDBERG, L.L.C. AND MICHAEL S. GOLDBERG

By:   / s / Jed Horwitt
       Jed Horwitt (ct04778)
       Zeisler & Zeisler, P.C.
       558 Clinton Avenue
       Bridgeport, CT 06605
       Tel. 203-368-4234
       Fax 203-367-9678
       Email: jhorwitt@zeislaw.com

14