**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

------------------------------------------------------X
: Chapter 7
In re: :
: Substantively Consolidated
MICHAEL S. GOLDBERG, LLC : LEAD CASE No. 09-23370 (AHWS)
MICHAEL S. GOLDBERG : MEMBER CASE No. 09-23371 (AHWS)
:
    Debtors. :
:
------------------------------------------------------X

**INTERIM FEE APPLICATION OF ZEISLER & ZEISLER, P.C., COUNSEL TO JAMES BERMAN, THE CHAPTER 7 TRUSTEE, SEEKING COMPENSATION AND REIMBURSEMENT OF DISBURSEMENTS FOR THE PERIOD JANUARY 1, 2014 THROUGH AUGUST 31, 2015**

TO:   THE HONORABLE ALAN H.W. SHIFF
       UNITED STATES BANKRUPTCY JUDGE

     Zeisler & Zeisler, P.C., (the "Applicant"), counsel to James Berman, the Chapter 7 Trustee in this substantively consolidated Chapter 7 bankruptcy (the "Goldberg Bankruptcy") of the debtors (the "Debtors") Michael S. Goldberg (the "Individual Case") and Michael S. Goldberg, L.L.C. (the "LLC Case"), hereby makes this application for compensation and reimbursement of disbursements (the "Application"), and in support thereof, respectfully represents:

## I.   BRIEF HISTORY OF THE GOLDBERG BANKRUPTCIES AND THE GOLDBERG SCHEME

1. The Goldberg Chapter 7 was commenced as two involuntary chapter 7 cases pursuant to petitions filed against the Debtors on November 18, 2009. These petitions were filed by a group of creditors who had sued Mr. Goldberg in state court for fraud arising out of what has now been admitted and determined to be a classic and pure Ponzi scheme with no legitimate business activity whatsoever (the "Goldberg Scheme"). Mr. Goldberg has admitted this in his Plea Agreement which was accepted by the District Court and incorporated in its Judgment and Order of Restitution.

2. The Debtors consented to the entry of orders for relief in the Bankruptcy Court on November 24, 2009. The Trustee was elected on January 7, 2010 and began his duties on that date. The Trustee filed a Motion to Retain Applicant on January 14, 2010 and the order authorizing Applicant's retention entered on January 22, 2010, <u>nunc</u> <u>pro</u> <u>tunc</u> to January 7, 2010.

## II.   SUMMARY OVERVIEW

3. This Application is for the 20-month period from January1, 2014 through August 31, 2015 (the "Fee Period").

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core

proceeding pursuant to 28 U.S.C. §157(b)(2).  The statutory predicates for the Application are 11 U.S.C. §§ 330 and 331.

5. **Exhibit A** contains the itemized time and expense entries for the Fee Period. Annexed as part of **Exhibit A** is a schedule of Applicant's billable rates and the total attorney time expended on all matters during the Fee Period.  Also annexed as part of **Exhibit A** are the daily time records, contemporaneously maintained by each attorney employed by Applicant, reflecting the work performed and time spent on these matters during the Fee Period by each individual lawyer. Each attorney's billable hours are set forth in increments of tenths of the hour and totaled as to each matter.  These sub-matters are set forth as Tabs 1-4 of **Exhibit A**.  **Exhibit A** also contains a schedule of Applicant's expenses and other disbursements for which Applicant seeks reimbursement (Tab 5).  Finally, **Exhibit A** contains a **Schedule A** annexed to Tab 1 (the Preference and Fraudulent Conveyance Adversary Proceeding Spreadsheet) which sets forth by adversary proceeding number the amount of attorneys' fees expended on each individual adversary proceeding Applicant prosecuted during the Fee Period, as well as fees expended on issues that were applicable to all adversary proceedings (General Litigation) and/or ones not yet commenced.  Applicant respectfully submits that **Schedule A** to Tab 1 of **Exhibit A** illustrates that the resources allocated by Applicant to the various adversary proceedings prosecuted during

the Fee Period were reasonable, appropriate and necessary to recover maximum value for the Estate.

6.  Applicant has not yet been compensated for any of its fees or expenses incurred after December of 2013, notwithstanding that this matter is a large engagement for Applicant and has consumed a significant portion of Applicant's resources over the past 20 months. Applicant has deferred this Interim Fee Application because Applicant felt it appropriate to wait, if it could responsibly do so given Applicant's financial requirements, until after a decision had been rendered by the Bankruptcy Court in the largest adversary proceeding the Trustee has prosecuted on behalf of creditors in the Goldberg Bankruptcy case. That adversary proceeding, 10-02082, was decided by Judge Dabrowski in the Trustee's favor on all causes of action pled by Applicant on behalf of the Trustee and has resulted in a recommended ruling to the District Court.

7.  This is Applicant's Fifth Interim Fee Application. Compensation for the 20-month Fee Period is requested in the amount of $1,287,952.00 representing 3,806 hours worked during the Fee Period by Applicant's attorneys, excluding the Trustee, James Berman. The total blended hourly rate for the attorneys who worked on the Goldberg Bankruptcy is $338.00. In addition to its fees, Applicant seeks $26,602.41 for reimbursement of out-of-pocket disbursements incurred during the Fee Period. These expenses are set forth on Tab 5 of **Exhibit A**.

### III. SIGNIFICANT EVENTS RELATED TO THE 20 MONTH FEE PERIOD

8. On March 31, 2015, the Honorable Albert S. Dabrowski (Ret.) rendered his Proposed Findings of Fact and Conclusions of Law to the District Court in Adversary Proceeding No. 10-02082 (the "02082 Decision"), in which the Trustee sought to recover approximately $14 million from various initial and subsequent transferees in what has now become known in this case as "The Goldberg Scheme".

9. The 02082 Decision determined, subject to de-novo review by the District Court and one objection filed by five related entities and an individual, the "Objecting Defendants", out of the eleven remaining defendants[1] that the Trustee was entitled to recover a total of $14,237,720.77 plus prejudgment interest, for a total of approximately $17 million. Approximately $10 million of the proposed $17 million judgment in the 02082 Decision was allocated (in various amounts) to the Objecting Defendants, with the full $10 million allocated against one individual defendant who controlled and/or controls the Objecting Defendants.

10. The entire $17 million proposed judgment in the 02082 Decision is allocated to a separate defendant who did not object to the 02082 Decision and against whom the Trustee holds collateral of approximately $1 million. If the 02082 Decision is adopted by the District Court and becomes a final judgment, the Trustee will be limited to one recovery even though

---

[1] The Trustee subsequently settled his claims with another remaining defendant for her waiving approximately $600,000 of claims and other valuable relief.

certain defendants will be jointly responsible for amounts up to the total $17 million under the Bankruptcy Code and applicable state fraudulent conveyance law.

11.     Given the facts adduced at the two week trial as reflected in the record and cited in the 02082 Decision, and the clarity, precision and comprehensiveness of the 02082 Decision, Applicant believes that the 02082 decision will be entered as a final judgment in the Trustee's favor[2].

12.     As of the filing of this Application, the Trustee will have recovered through Applicant's assistance, over $18 million of money and other property for the Estate in the five and a half years he has been pursuing recoveries. During the Fee Period, Applicant recovered for the Trustee and the Estate a total of over $1 million, through settlements of certain of the other approximately twenty-five adversary proceedings that remained open from the initial approximately two hundred adversary proceedings brought by Applicant on behalf of the Trustee. The foregoing recoveries are in addition to Applicant obtaining millions of dollars of waived creditor claims against the estates and assignments of potentially valuable litigation claims against third parties from many settling defendants, all of which have provided significant additional value**.**

---

[2] This is Applicant's opinion only based upon the Record and controlling case law supporting each and every finding of fact and conclusion of law proposed by Judge Dabrowski to the District Court.

13. On or about December 28, 2012, the Trustee made a $9,000,000 distribution to the holders of allowed unsecured claims which provided, as noted, a 27.5% dividend to the creditor/victims of the Goldberg Scheme. The Trustee believes there will be significant additional dividends to unsecured creditors in the future, especially given the 02082 Decision. The Trustee is holding approximately $3.2 million of funds net of the First Distribution, including approximately $1 million held in escrow pursuant to prejudgment attachments and other collateral funds obtained from non-objecting or defaulting defendants in the 02082 Adversary Proceeding.

14. The Trustee is continuing to prosecute other significant adversary proceedings, by far the largest of which is related to the 02082 Adversary Proceeding and was commenced in June of 2014 to avoid, and preserve the Trustee's ultimate ability to recover millions of dollars of asset transfers made by certain of the Objecting Defendants after the 10-02082 Adversary Proceeding had been commenced but before they were named as defendants therein. This and other pending (and as yet to be commenced) adversary proceedings related to the 10-02082 Adversary Proceeding comprise by far the largest remaining assets in the Goldberg Estate and are potentially worth up to $17 million plus post-judgment interest. Although there is no guaranty that the Trustee will ultimately prevail in these other adversary proceedings, Applicant submits, especially given the 02082 Decision, that the time expended on all of the various

adversary proceedings and other activities during the Fee Period was necessary, appropriate and reasonably calculated to maximize value for this Estate. Applicant has communicated frequently with the major creditors of the Estate throughout the Fee Period and kept them apprised of both developments in all adversary proceedings and the extent of Applicant's fees.

15. As more fully explained below, Applicant is not seeking compensation for fees totaling over $57,000 of attorney time during the Fee Period. These waived fees include all of the Trustee's legal work and all the work of Applicant's attorneys set forth in Tab [4] ("Administration"). Additionally, Applicant agreed with the United States Trustee at the outset of this bankruptcy case to "hold back" of 10% of Applicant's fees, which for the Current application would amount to ($128,952.00) of approved fees, to be paid only after further order of the Bankruptcy Court at an appropriate time.

16. **Exhibit A** is divided into sub-matters (Tabs 1-4) which reflect the areas of work performed during the Fee Period, with the overwhelming majority of Applicant's time spent in connection with prosecuting adversary proceedings for fraudulent conveyances, preferences and other recovery litigation (Tab 1).

17. Tab 4 of **Exhibit A** is the total time incurred for the Goldberg Estate by the Trustee and by Applicant's attorneys (other than the Trustee) whose fees Applicant is not charging to the Estate. None of the Trustee's time throughout this entire five and one-half year

case, regardless of whether he was providing legal services or performing the administrative duties of a trustee, has been charged to the Estate and all of such time during the Fee Period is set forth on Tab 4 of **Exhibit A** to this Application.

18. The total amount of waived attorneys' fees in Tab 4, inclusive of the Trustee's time, is $57,030.00. Applicant will not seek compensation for any of the services set forth on Tab 4, other than the Trustee's commission pursuant to 11 U.S.C. § 326(a) at a future date.

19. Given the results achieved thus far, including a 27.5% First Interim Distribution to unsecured creditors; the collection of over $1 million during the Fee Period; the reduction of millions of dollars of judicially denied and voluntarily waived claims obtained by Applicant, over $600,000 of which was during the Fee Period; and, most importantly, the entry of the 02082 Decision (subject to de novo review by the District Court). Applicant respectfully submits that the compensation requested for the twenty-month Fee Period was necessary, and is fair and reasonable.

### IV. **APPLICANT'S SPECIFIC SERVICES DURING THE FEE PERIOD**

20. During the Fee Period, Applicant performed all of the legal services necessary to assist the Trustee in his duties under the Bankruptcy Code including:

    (a) Continuing to investigate and determine certain circumstances surrounding the Goldberg Scheme;

  (b) Prosecuting various clawback actions designed to recover preferences, fraudulent conveyances and other transfers for the benefit of creditors of the estates, virtually all of whom are also victims of the Goldberg Scheme;

  (c) Identifying, recovering and liquidating property of the estate;

  (d) Investigating, analyzing and objecting to filed proofs of claim and other claims against the estates;

  (e) Investigating causes of action against third parties which might lead to additional recoveries for creditors/victims of the Goldberg Scheme.

  (f) Advising the Trustee on various legal issues related to the Goldberg Scheme and bankruptcy and Ponzi scheme law generally.

  (g) Prosecuting numerous adversary proceedings, many of which have involved extensive discovery, legal research, contested motions, prejudgment remedy proceeding, trials and other court hearings.

  (h) Settling or obtaining resolution of numerous adversary proceedings, including the issuance of the 02082 Decision in the Trustee's favor on the largest lawsuit prosecuted by Applicant.

21. Applicant continues to investigate claims against third parties which could result in additional recoveries for the estate unassociated with the recovery of fraudulent and/or preferential pre-petition transfers by the Debtors.

22. Finally, Applicant has assisted and continues to assist the Trustee with the liquidation of property of the Estate other than avoidance/recovery actions and anticipates that the Trustee will obtain additional sums in connection therewith as well.

23. Attached hereto are the specific matters (Tabs 1-4) of **Exhibit A** on which Applicant has provided services during the Fee Period. **Exhibit A** sets forth the specific detail and includes the amount of time spent in tenths of the hour by each attorney who provided work in connection with each particular matter. At the end of each sub-matter identified in **Exhibit A**

is a schedule showing each attorney who provided time on that particular matter, the total amount of time expended and the attorney's billing rate.

### A. PREFERENCE AND FRAUDULENT CONVEYANCE LAWSUITS – TAB 1

24. This sub-matter is where the bulk of Applicant's time was spent and, as previously discussed, includes the resolution, subject to de-novo review by the District Court in the Trustee's favor, of by far the largest adversary proceeding commenced in this bankruptcy case. Related thereto was Applicant's prosecution of several interconnected adversary proceedings. These included a contested evidentiary prejudgment remedy hearing and numerous contested motions and briefs related thereto, as well as extensive discovery and discovery related hearings. Applicant also litigated a "Stern"-type motion challenging the Bankruptcy Court's jurisdiction, motions to withdraw the reference, and contempt motions to enforce the Trustee's rights pending final resolution of the 10-02082 adversary proceeding.

25. Applicant also engaged in other work in connection with preference/fraudulent conveyance litigation involving, among other things, researching and analyzing the continuously evolving and growing body of law within this district, this circuit and the nation regarding various Ponzi scheme clawback issues including: Bankruptcy Court jurisdictional issues, good faith; inquiry notice and the satisfaction of the duty associated therewith; forfeiture law; the ordinary course of business and other preference defenses in a Ponzi scheme; the "Ponzi scheme

presumption"; "value" under 11 U.S.C. §§§ 547, 548, 550 and state law; in pari-delicto issues; confidentiality issues; the "conduit" and "collapsing" doctrines; aiding and abetting a Ponzi scheme; and many other legal issues surrounding the liquidation of assets in the context of a large Ponzi scheme which involved over $140 million in transfers.  Much of this work is reflected in the "General Litigation" subcategory on **Schedule A** to Tab 1 of **Exhibit A**.

26.     Applicant was also involved in the drafting prosecution, defense, and/or negotiation of: complaints; applications for prejudgment remedies; prejudgment remedy orders and agreements; sworn declarations and other disclosures designed to ensure fair and appropriate settlements; legal memoranda; applications for 2004 examinations; settlement agreements; affidavits; and various other pleadings, hearings, and proceedings.

27.     Applicant worked with the Trustee's forensic accountants to prepare for contested hearings and trials, including assembling evidence necessary to establish the transfers for every adversary proceeding prosecuted by Applicant.

28.     As set forth in Tab 1 of **Exhibit A**, Applicant is seeking $1,267,872.00 of fees in connection with work related to Preference and Fraudulent Conveyance Litigation.  A specific description of all the activities undertaken by Applicant in connection with preference/fraudulent conveyance and other recovery lawsuits is set forth in Tab 1 of **Exhibit A**.  Additionally,

Applicant has attached **Schedule A** to Tab 1 showing how much attorney fees were expended on each adversary proceeding Applicant worked on during the Fee Period.

### B. BANKRUPTCY LEGAL ISSUES – TAB 2

29. This work included analyzing and asserting the Trustee's ability to force the sale of jointly owned assets among the Debtor and various individuals; research analysis and negotiation of various agreements regarding securing, taking possession of and/or liquidating property of these estates; and marketing the sale of certain real property owned by the Estate.

30. As set forth in Tab 2 of **Exhibit A** Applicant is seeking $55,604.00 of fees in connection with its work related to Property of the Estate issues. A more detailed description of activities in connection with Property of the Estate issues is set forth in Tab 3 of **Exhibit A**.

### C. CLAIMS OBJECTIONS AND ANALYSIS – TAB 3

31. Applicant utilized $21,506.00 of attorney time analyzing and objecting to claims against the estates. A detailed description of Applicant's work in connection with Claims Objections and Analysis is set forth on Tab 3.

### V. ADMINISTRATION – TAB 4

32. Tab 4 sets forth all of the Trustee's time, both legal and administrative, and the attorney time of various of Applicant's attorneys that is compensable but is <u>not</u> being charged to the Estate. As previously stated, Applicant is seeking no compensation for $57,030.00 of

attorney time and Trustee time as set forth in Tab 4 other than the Trustee's commission at a later date.

## VI. <u>DISBURSEMENTS – TAB 5</u>

33. During the Fee Period, Applicant incurred out-of-pocket expenses in the amount of $26,602.41 connected almost entirely to prosecuting adversary proceedings. Applicant submits that these disbursements were necessary and reasonable in amount. Due to the number of lawsuits in this case, and the fact that many defendants were out of state, and the number of creditors and other parties in interest receiving notices and pleadings, Applicant incurred substantial costs, including but not limited to, air travel, hotels, court reporters, photocopying, online research and distributing voluminous materials. Given the amount of litigation Applicant has been engaged in, court reporters' fees constitute a significant portion of Applicant's expenses. Applicant has also made extensive distributions of documents to parties in interest, their representatives and counsel, and many other parties in interest who either were part of negotiations or were actively participating on matters being submitted to the Court on a regular basis. Those distributions included pleadings, proposed agreements and proposed orders. Due to the expedited nature of many of these items, the distributions were often sent by telecopier and overnight mail. Because many of the defendants in these actions reside out of the state, Applicant had significant out of pocket expenses for attorney travel and lodging.

WHEREFORE, Applicant respectfully requests that this court enter an Order: (i) awarding and authorizing the payment of compensation for the period January 1, 2014 through and including August 31, 2015 in the amount of $1,287,952.00 for services rendered by Applicant as counsel to James Berman, the Chapter 7 Trustee; (ii) requiring the Trustee to hold back 10% of that amount ($128,795.20) from payment to Applicant, subject to further order of the Bankruptcy Court; (iii) approving the reimbursement of expenses incurred and expended during the Fee Period in the amount of $26,602.41; and (iv) granting such other and further relief as this Court deems just and proper.

Dated this 21st day of October, 2015 at Bridgeport, Connecticut.

> JAMES BERMAN, CHAPTER 7 TRUSTEE FOR THE ESTATES OF MICHAEL S. GOLDBERG, L.L.C. AND MICHAEL S. GOLDBERG
>
> By:  / s / Jed Horwitt
> Jed Horwitt (ct04778)
> Stephen M. Kindseth (ct14640)
> Zeisler & Zeisler, P.C.
> 10 Middle Street, 15th Floor
> Bridgeport, CT 06604
> Tel. 203-368-4234
> Fax 203-367-9678
> Email: jhorwitt@zeislaw.com