**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

```
-------------------------------------------------------X
                                                       :    Chapter 7
In re:                                                 :
                                                       :    Substantively Consolidated
MICHAEL S. GOLDBERG, LLC                               :    LEAD CASE No. 09-23370 (AHWS)
MICHAEL S. GOLDBERG                                    :    MEMBER CASE No. 09-23371 (AHWS)
                                                       :
         Debtors.                                      :
                                                       :
-------------------------------------------------------X
```

**SIXTH INTERIM FEE APPLICATION OF ZEISLER & ZEISLER, P.C., COUNSEL TO JAMES BERMAN, THE CHAPTER 7 TRUSTEE, SEEKING COMPENSATION AND REIMBURSEMENT OF DISBURSEMENTS FOR THE PERIOD SEPTEMBER 1, 2015 THROUGH AUGUST 31, 2017**

TO:   THE HONORABLE JULIE MANNING
      UNITED STATES BANKRUPTCY JUDGE

Zeisler & Zeisler, P.C., (the "Applicant"), counsel to James Berman, the Chapter 7 Trustee in this substantively consolidated Chapter 7 bankruptcy case (the "Goldberg Bankruptcy") of the debtors, Michael S. Goldberg and Michael S. Goldberg, L.L.C. (collectively, the "Debtors"), hereby submits this sixth interim fee application (the "Application"), seeking the award of compensation in the amount of $1,016,423.05, and the reimbursement of expenses in the amount of $14,281.39, for the period from September 1, 2015, through and including August 31, 1017.  In support thereof, the Applicant respectfully represents as follows:

1.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. §157(b)(2).  The statutory predicates for the Application are 11 U.S.C. §§ 330 and 331.

1

**I.    BACKGROUND**

2.    The Goldberg Bankruptcy was commenced as two involuntary chapter 7 cases pursuant to petitions filed against the Debtors on **November 18, 2009**. These petitions were filed by creditor-victims holding approximately $10 million of claims and who comprise almost a third of the total claims in this case. The involuntary petitioning creditors had sued Mr. Goldberg in state court for fraud arising out of what has now been admitted and determined to be a pure Ponzi Scheme with no legitimate business activity conducted by the Debtors whatsoever (the "Goldberg Scheme"). Mr. Goldberg admitted all of this in his Plea Agreement which was accepted by the District Court (Chatigny, J.) and incorporated in its Judgment and Order of Restitution, ordering Mr. Goldberg to pay restitution in the amount of over $30 million dollars.

3.    The Debtors consented to the entry of orders for relief in the Bankruptcy Court on **November 24, 2009**. The Trustee was elected on **January 7, 2010** and began his duties on that date. The Trustee filed a Motion to Retain Applicant on January 14, 2010 and the order authorizing Applicant's retention entered on January 22, 2010, <u>nunc pro tunc</u> to January 7, 2010.

4.    This Application is for the two-year period from **September 1, 2015** through **August 31, 2017** (the "Fee Period"). Applicant has not been compensated for any of its work for the past twenty-four (24) months and did not file a fee application during that time. Applicant chose to defer this Application in the hope that clarity would be achieved regarding the largest potential asset in the Goldberg Bankruptcy in the form of a final judgment on the first-commenced, and largest, of the over 200 adversary proceedings prosecuted by the Applicant: <u>Berman v. Edward Malley et. al.</u>, Case No. 10-02802 (the "Malley-LaBonte Adversary Proceeding"). On **September 27, 2017** that clarity arrived when the District Court (Thompson, J.) entered its Order Regarding Proposed Findings (the "Final Malley-LaBonte Judgment")

effectively upholding, in toto, Bankruptcy Court's (Dabrowski, J) Proposed Findings of Fact and Conclusions of Law (the "Proposed Malley-LaBonte Judgment"), which had entered on **March 31, 2015**.

5.  **Exhibit A** contains the itemized time and expense entries for the Fee Period. Annexed as part of **Exhibit A** is a schedule of Applicant's billable rates and the total attorney time expended on all matters during the Fee Period. Also annexed as part of **Exhibit A** are the daily time records, contemporaneously maintained by each attorney employed by Applicant, reflecting the work performed and time spent on these matters during the Fee Period by each individual lawyer. Each attorney's billable hours are set forth in increments of tenths of the hour and totaled as to each matter. These sub-matters are set forth as Tabs 1 through 6. **Exhibit A** also contains a schedule of Applicant's expenses and other disbursements for which Applicant seeks reimbursement (Tab 7).

6.  Given Applicant's preference to defer seeking its compensation until the final disposition of the Bankruptcy Court's Proposed Malley-LaBonte Judgment (subject to Applicant's fiduciary duties and obligations to its employees, owners and creditors); and notwithstanding that the Goldberg Bankruptcy remains a large engagement for Applicant representing a significant portion of Applicant's resources expended over the past twenty-four (24) months, Applicant is only now seeking compensation for its fees and disbursements incurred after **August of 2015**. Given the District Court's entry of the Final Malley-LaBonte Judgment, Applicant seeks compensation knowing that the creditors-victims of the Goldberg Scheme have certainty that the Final Malley-LaBonte Judgment is non-appealable and can be executed upon in various amounts against a multitude of defendants.

7. This is Applicant's Sixth Interim Fee Application. Compensation for the 24-month Fee Period is requested in the amount of $1,016,426.05 representing 2,666.10 hours worked during the Fee Period by Applicant's attorneys, excluding the Trustee, James Berman.[1] The total blended hourly rate for the attorneys who worked on the Goldberg Bankruptcy, during the Fee Period is $386.54. In addition to its fees, Applicant seeks $14,281.39 for reimbursement of out-of-pocket disbursements incurred during the Fee Period.

## II. APPLICANT'S SERVICES RENDERED DURING THE PERIOD OF THE DISTRICT COURT'S DE-NOVO REVIEW OF THE PROPOSED MALLEY-LABONTE JUDGMENT WHICH IS COTERMINOUS WITH THE FEE PERIOD

8. On **March 31, 2015**, the Honorable Albert S. Dabrowski (Ret.) rendered the Proposed Malley-LaBonte Judgment. The Proposed Malley-LaBonte Judgement determined, subject to de-novo review by the District Court and the objections filed by the second largest defendant, Mr. LaBonte and his five related entity defendants (collectively, the "LaBonte Objectors"), that the Trustee was entitled to recover a total of $14,237,720.77 plus prejudgment interest from the date of the 2010 complaint commencing the Malley-LaBonte Adversary Proceeding, for what is at present a total of approximately $17 million against Mr. Malley and approximately $10 million against Mr. LaBonte, with lesser amounts attributable to the LaBonte Objectors, all of whom are and/or were controlled by Mr. LaBonte.

9. On about August, 2015, the District Court received the Bankruptcy Court's Malley-LaBonte Adversary Proceeding file for de-novo review of the Proposed Malley-LaBonte Judgment.

10. On **September 27, 2017** the District Court entered the Final Malley-LaBonte Judgment upholding the Proposed Malley-LaBonte Judgment and on **October 12, 2017** the

---

[1] Applicant agreed at the outset of the Goldberg Bankruptcy that it would not bill or be compensated for any of Attorney Berman's time, other than seeking that Trustee's statutory fee at the appropriate juncture.

District Court's Order docketing that Judgment became final and non-appealable as to all defendants.

11. The period from the date the Bankruptcy Court's Malley-LaBonte Adversary Proceeding file (including the LaBonte Objections) was under review by the District Court, and the date that the District Court's order entered upholding the Proposed Malley-LaBonte Judgment (the "De-Novo Review Period") encompasses all of the Fee Period herein. During this two-year period, the Trustee and the Applicant were faced with the responsibility of trying to protect from dissipation all material assets of the Malley-LaBonte Defendants which could satisfy an ultimate final judgment in the Trustee's favor, as opposed to such judgment being a pyrrhic victory if those assets were no longer recoverable. Both before and after entry of the Proposed Malley-LaBonte Judgment, as evidenced in numerous pleadings, the Trustee and Applicant felt confident that a final judgment would ultimately enter in the full amount of the $14 million of transfers sought to be avoided against multiple individuals and entities. Based on this belief, the Trustee commenced various additional adversary proceedings prior to the statute of limitations running, all in consultation with the largest creditor-victims of the Goldberg Estate.

12. The work Applicant performed for the Trustee, the Estate and the creditor-victims of the Goldberg Scheme in this regard during the Fee Period includes the following, all of which is reflected in Applicant's time records attached hereto as Composite **Exhibit A**:

    A.    **Settlement Efforts Regarding the Proposed Malley-LaBonte Judgment**

13. Following Judge Dawbrowski's entry the Proposed Malley-LaBonte Judgment, Applicant attempted to settle the Malley-LaBonte Adversary Proceeding (and related fraudulent conveyance and other avoidance actions commenced subsequently to protect a final judgment) and negotiated privately with certain of the Malley-LaBonte defendants. Those settlement

negotiations continued at varying intensity throughout much of the Fee Period and at times were extremely time-consuming. Applicant performed significant services negotiating and drafting settlement agreements with multiple individuals and entities; negotiating and drafting sworn representations and warranties to be executed by various alleged fraudulent transferees of the Malley-LaBonte Defendants; and negotiating and drafting comprehensive financial statements and financial representations regarding the current assets and liabilities of such defendants and transferees (all designed to protect the Estate from an ill-advised compromise and settlement of such a large pending claim). Pursuant to its work on settlements, Applicant participated in numerous conference calls, meetings, informal and formal discovery, and strategy sessions with creditor-victims. Moreover, as set forth in detail below, Applicant also organized and participated in a complex, Court-ordered, global mediation among all remaining defendants.

      B.     **Other Avoidance Actions Pursued During the Fee Period**

      14.     During the De-Novo Review and Fee Period, Applicant also continued to pursue other avoidance actions. These avoidance actions included actions against subsequent transferees of Mr. LaBonte who had invested in the Goldberg Scheme through Messrs. LaBonte and Malley (the "LaBonte Sub-Investors"), but who were not defendants in the Malley-LaBonte Adversary Proceeding. Applicant also commenced and/or continued to prosecute several multi-million-dollar avoidance actions against individuals and entities who had received property from one or more of the Malley-LaBonte Defendants post-commencement of the Goldberg Bankruptcy and which transfers did not originate from Mr. Goldberg, but rather from Mr. Goldberg's mediate and intermediate transferees.

      15.     Among several such actions that the Trustee continues to pursue through the Applicant's representation, is an action (The "Landino Adversary Proceeding") against Robert

A. Landino ("Landino") and certain of his entities (collectively, the "Landino Defendants") to recover over ten million dollars of personal and/or real property which the Trustee alleges was intentionally and fraudulently conveyed to the Landino Defendants by Mr. LaBonte and his entities (all of whom who were joint-venture partners with the Landino Defendants). The Trustee alleges that these transfers were intended to make the LaBonte parties "judgment proof," and the Landino transferees immune, from the future and existing avoidance actions by the Trustee.

16. Additionally, during the Fee Period, the Trustee commenced a fraudulent conveyance action against an entity, DEI, Inc., owned by Mr. LaBonte's parents (Roland and Marylyn LaBonte) (the "DEI Adversary"). The Trustee alleges that DEI Inc. received close to a million dollars in cash, and other valuable assets, **while the decision in the Malley-LaBonte Adversary Proceeding was pending** (and within days of the Trustee's pre-judgment remedy hearing in the LaBonte Dynasty Trust Action (as hereafter defined)), from Devcon Enterprises, Inc., a Scott LaBonte - owned company and itself a defendant in yet another separate, **and still pending** adversary proceeding: Berman v. Sally LaBonte, et. al. (the "LaBonte Dynasty Trust Action"). Applicant commenced the LaBonte Dynasty Trust Action in 2014, including prosecuting a three-day "pre-judgment remedy" evidentiary hearing, while a decision in the Malley-Labonte Adversary Proceeding was sub judice with the Bankruptcy Court. The LaBonte Dynasty Trust Action was commenced because the Trustee had discovered, during Applicant's prosecution of the Malley-LaBonte Adversary Proceeding, that Mr. LaBonte had transferred millions of dollars of interests in real estate ventures comprising **substantially all of Mr. LaBonte's assets** to the LaBonte Dynasty Trust in 2010, after learning that Mr. LaBonte's cousin, Edward Malley, had been sued by the Trustee to recover the over $14 million of fraudulent transfers he received from Mr. Goldberg, the majority which was down-streamed to

7

Mr. LaBonte and his own Sub-Investors.[2]  Many if not all of the foregoing factual assertions above are containted in and adopted by the District Court in Final Malley-LaBonte Judgment.

### C.     Fraudulent Conveyance Actions Against Other Goldberg Transferees

17.     During the Fee Period, Applicant continued to prosecute multiple fraudulent conveyance actions commenced during the first two years of the Goldberg Bankruptcy. These actions include pursuing claims that were stayed by the Soldiers and Sailors Relief Act and which can now go forward without depriving the defendants of any of their statutory rights; claims against Mr. Goldberg's family members which were deferred during Mr. Goldberg's cooperation with the Federal Authorities and with the Trustee (who is also the Court-Appointed Federal Receiver for Restitution pursuant to previous orders of the District and Bankruptcy Courts). These other avoidance actions include actions against Mr. LaBonte's "Sub Investors," who invested in, and received payouts from, the Goldberg Scheme, all through Mr. LaBonte, as a "feeder." Finally, Applicant expended significant time during the Fee Period investigating and strategizing a potential Racketeer Influenced and Corrupt Organizations Act**,** 18 U.S.C. §§ 1961–1968 Action against various attorneys, accountants and others who were knowingly assisting Mr. LaBonte and his entities in their efforts to denude Mr. LaBonte and the LaBonte-related parties of any assets that could be reached by the Trustee or any other creditors if there were ever a final judgment against them.

18.     All of the Applicant's time spent pursing and/or investigating and strategizing these other actions are reflected in Tab 1 of **Exhibit A**.

---

[2] One of the proposed findings by the Bankruptcy Court, ultimately adopted by the District Court, was that Mr. LaBonte and Mr. Malley were "feeders" to the Goldberg Scheme.

## III.    THE COURT ORDERED GLOBAL MEDIATION

19. During the Fee Period, Applicant organized and participated in a Court-ordered global mediation of the Malley-LaBonte Adversary Proceeding and all related adversary proceedings, including (1) the LaBonte Dynasty Trust Action; (2) the Landino Adversary Proceeding; (3) the LaBonte Sub-Investor Action; and (4) the potential and threatened, but as then un-filed DEI Adversary.

20. The genesis of the global mediation was Mr. LaBonte's stated condition, prior to entering into a new pretrial order in the LaBonte Dynasty Trust Action, that the Trustee stay such action (including a decision on the pending PJR Application) and engage in a global mediation with the LaBonte-related defendants and certain others. This mediation was agreed to by the Trustee, conditioned upon approval by the Court and the Court-ordered participation of not just the LaBonte-related defendants but of **all** of the existing defendants in all the major pending avoidance actions. Through this mechanism, the Trustee, the creditor-victims, most if not all defendants, and presumably the Court, hoped that the parties could settle the largest remaining assets in the Estate so that the Goldberg Bankruptcy could be brought to a conclusion for all parties-in-interest, especially given the perceived "settlement impetus" provided for by the Bankruptcy Court's Proposed Malley-Labonte Judgment, the LaBonte Objections thereto and the pending de novo review by the District Court.

21. After many weeks of party identification and organization, negotiating the appointment of a unanimously acceptable Mediator (G. Edward Dobbs), negotiating how the Mediator's fee would be shared, scheduling, strategizing, brief drafting (and sharing meeting with the Mediator), and two full days of mediation in Hartford, Connecticut, the Mediator, the Trustee and certain defendants *were* able to settle the Estate's claims against certain significant

individual defendants in the largest remaining adversary proceedings. The parties were not, however, able to settle globally with the largest defendants (in terms of dollar liability) in the remaining adversary proceedings in the Goldberg Bankruptcy. The work performed by Applicant in connection with the Court Ordered Global Mediation was significant and is set forth in Tab 1 of **Exhibit A**. Notwithstanding the failure to settle with Mr. LaBonte, Mr. Landino and many of the LaBonte-related defendants, the Trustee and Mr. LaBonte continued to negotiate a settlement, but in the end were unable to agree on certain material elements.

### IV.     RECOVERIES DURING THE FEE PERIOD

22. As of the filing of this Application, the Trustee will have recovered through Applicant's assistance, over $19 million of money and other property for the Estate in the seven and a half years he has been pursuing recoveries. During the Fee Period, Applicant recovered for the Trustee and the Estate a total of over $769,000.00, through various means, including settlements of certain of the other approximately fifteen adversary proceedings that remained open for some period of time during the Fee Period out of a total of approximately two hundred adversary proceedings brought by Applicant on behalf of the Trustee.

### V.     COMPENSATION AND EXPENSE REIBURSEMENT REQUESTED

23. The actual recoveries of Applicant during the Fee Period do not reflect the true value provided to the Estate by the Trustee and Applicant, by dedicating significant resources protecting assets they believe will ultimately be recoverable on the first commenced and largest action in the Debtors' Estate, which is now a final and non-appealable judgment.

24. Applicant has communicated frequently with the major creditors of the Estate throughout the Fee Period and kept them apprised of both developments in all adversary proceedings and the extent of Applicant's fees.

25. Applicant is not seeking compensation for fees totaling over $14,120.00 of attorney time during the Fee Period. These waived fees include all of the Trustee's legal work and all the work of Applicant's attorneys set forth in Tab 6 ("Administration"). None of the Trustee's time throughout this entire seven and one-half year case, regardless of whether he was providing legal services or performing the administrative duties of a trustee, has been charged to the Estate and all of such time during the Fee Period is set forth on Tab 6. Additionally, Applicant agreed with the United States Trustee at the outset of this bankruptcy case to "hold back" 10% of Applicant's fees, which for the current application would amount to ($101,642.31) of approved fees, to be paid only after further order of the Bankruptcy Court at the appropriate time.

26. **Exhibit A** is divided into sub-matters (Tabs 1 through 6) which include a summary and then reflect the areas of work performed during the Fee Period, with the overwhelming majority of Applicant's time spent in connection with prosecuting adversary proceedings, including fraudulent conveyance actions, preference actions and other avoidance litigation (Tab 1).

27. Given the results achieved in the Goldberg Bankruptcy thus far, **including a 27.5% First Interim Distribution to unsecured creditors**; the entry of the Final Malley-LaBonte Judgment, the collection of almost $1 million during the Fee Period; and Applicant's services protecting its ability to ultimately collect on that Final Judgment, Applicant respectfully submits that the compensation requested for the twenty-four-month Fee Period is necessary, fair and reasonable.

28. During the Fee Period, Applicant incurred out-of-pocket expenses in the amount of $14,281.39 connected almost entirely to prosecuting adversary proceedings. Applicant

submits that these disbursements were necessary and reasonable in amount. Due to the number and magnitude of the lawsuits in this case, the fact that there are multiple defendants in many of those actions, and the number of creditors and other parties in interest entitled to receive notices and pleadings, Applicant incurred substantial out of pocket expenses, including but not limited to, hotels, court reporters, photocopying, online research and distributing voluminous materials. Given the amount of litigation Applicant has been engaged in, court reporters' fees also constitute a material portion of Applicant's expenses.

**WHEREFORE**, Applicant respectfully requests that this court enter an Order: (i) awarding and authorizing the payment of compensation for the period September 1, 2015 through and including August 31, 2017 in the amount of $1,016,423.05 for services rendered by Applicant as counsel to James Berman, the Chapter 7 Trustee; (ii) requiring the Trustee to hold back 10% of that amount ($101,642.31) from payment to Applicant, subject to further order of the Bankruptcy Court, for a total current fee payment of $914,780.74; (iii) approving the reimbursement of expenses incurred and expended during the Fee Period in the amount of $14,281.39; and (iv) granting such other and further relief as this Court deems just and proper.

Dated this 14th day of November, 2017 at Bridgeport, Connecticut.

JAMES BERMAN, CHAPTER 7 TRUSTEE FOR THE ESTATES OF MICHAEL S. GOLDBERG, L.L.C. AND MICHAEL S. GOLDBERG

By: */s/ Jed Horwitt*
Jed Horwitt (ct04778)
Stephen M. Kindseth (ct14640)
Zeisler & Zeisler, P.C.
10 Middle Street, 15th Floor
Bridgeport, CT 06604
Tel. 203-368-4234
Fax 203-367-9678
Email: jhorwitt@zeislaw.com