**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

---------------------------------------------------------X
                                    :      Chapter 7

In re:                                   :
                                    :      Substantively Consolidated
MICHAEL S. GOLDBERG, LLC       :      LEAD CASE No. 09-23370 (JAM)
MICHAEL S. GOLDBERG             :      MEMBER CASE No. 09-23371 (JAM)
                                    :
          Debtors.                   :
                                    :
---------------------------------------------------------X

**TRUSTEE'S MOTION PURSUANT TO 11 U.S.C. SECTIONS 327, 328 AND 105 TO AMEND ZEISLER & ZEISLER, P.C.'S GENERAL COUNSEL RETENTION TO INCLUDE PROSECUTING A RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ("RICO") CIVIL ACTION AGAINST VARIOUS DEFENDANTS ON A SPECIAL "LESSER OF" CONTINGENCY FEE ARRANGEMENT WITH A POTENTIAL ADDITIONAL SUCCESS FEE WITH ALL SUCH COMPENSATION SUBJECT TO FINAL COURT APPROVAL UNDER 11 U.S.C. 330 <u>NOTWITHSTANDING SECTION 328 (a)</u>**

Pursuant to 11 U.S.C. §§ 327(a), 328(a), and 105, James Berman, Chapter 7 Trustee (the "Trustee") for the substantively consolidated bankruptcy estate (the "Estate") of Michael S. Goldberg, LLC and Michael S. Goldberg (collectively, "Goldberg" or the "Debtors"), by and through his undersigned general counsel, Zeisler & Zeisler, P.C. ("Z&Z"), respectfully moves for the entry of an order amending Z&Z's retention as general counsel to the Trustee to authorize Z&Z to pursue RICO and related claims (the "RICO Action") for the benefit of the Estate under a special contingency fee arrangement subject to the terms and conditions described herein and as set forth in the Proposed Order submitted herewith. As good cause for the granting of the relief requested herein the Trustee represents:

1

A. **Introduction**

1. This Chapter 7 Ponzi scheme liquidation, now in its tenth year, began as two involuntary Chapter 7 cases pursuant to petitions filed against the Debtors on November 18, 2009, by a group of creditors who were collectively owed over $12 million in principal invested with Goldberg. These creditors had sued Goldberg in state court to recover their investments after discovering Goldberg's fraud in what has now been judicially determined to have been a classic and pure Ponzi scheme with no legitimate business activity (the "Goldberg Scheme"). The Debtors consented to the entry of orders for relief in the Bankruptcy Court on November 24, 2009.

2. This Court confirmed the Trustee's election on January 11, 2010, and the United States Trustee ("UST") appointed the Trustee on January 12, 2010.

3. The Trustee filed an Application to Retain Z&Z as General Counsel to the Trustee on January 14, 2010 (the "Application to Retain"). *See* Docket Item ("D.I.") 43.

4. The Application to Retain describes the legal services that Z&Z is to provide to the Trustee, and for the Estate, and further provides that Z&Z is to be compensated for its services on an hourly basis:

> Subject to the Court's approval, Z&Z will charge the estates in the Goldberg Cases for its legal services on an hourly basis in accordance with its ordinary and customary hourly rates in effect on the date services are rendered. Z&Z will maintain detailed records of any actual and necessary or appropriate costs and expenses incurred in connection with the aforementioned legal services.

Application to Retain, D.I. 43, at ¶10.

5. The order authorizing Z&Z's retention entered on January 22, 2010, *nunc pro tunc* to January 7, 2010. *See* D.I. 48.

B. **The History of Z&Z's Clawback Action Prosecution and the Recovery for the Creditor/Victims**

6. In the more than nine (9) years since its retention, Z&Z, on behalf of the Trustee, has prosecuted approximately 200 clawback proceedings and other civil actions to recover property of the Estate with the goal of compensating the creditors of this Estate, all of whom are victims of the Goldberg Scheme ("Creditor/Victims"). The vast majority of the proceedings prosecuted by Z&Z on the Trustee's behalf have been successfully resolved through settlement or judgment and have resulted in a total recovery by the Trustee of $19,213,869.82. Pursuant to prior orders of this Court, the Trustee has distributed $8,354,651.01 to Creditor/Victims, resulting in an interim distribution (the "Interim Distribution") in 2012 of approximately twenty-seven and one-half percent (27.5%) on all allowed claims.

7. The Interim Distribution and any future additional distributions to Creditor/Victims will offset, dollar-for-dollar, Mr. Goldberg's remaining obligation to pay his court-ordered criminal restitution obligation in the amount of thirty million dollars ($30,000,000) in the related criminal proceeding *United States of America v. Michael S. Goldberg*, 3:10-CR-00192(RNC) (the "Criminal Proceeding"). In the Criminal Proceeding, pursuant to prior orders of the District Court (the Hon. Robert N. Chatigny, J.), and this Court, the Trustee was appointed and ordered to serve as the Temporary Receiver for Criminal Restitution, with all the powers and obligations set forth in the Order Appointing Receiver [D.I. 47-1] and in various governing federal statutes.[1]

---

[1] The relevant factual background discussed herein is more comprehensively set forth in the Chapter 7 Trustee's Status Report, filed with this Court on July 3, 2019, and attached hereto as **Exhibit A** and incorporated herein. The Trustee respectfully directs the Court and all parties in interest to the Status Report for a more fulsome recounting of various parties' actions and interconnections, each of which provide some of the basis for this Motion.

8. By design, the Trustee's first-commenced clawback action was (and unfortunately remains) the largest asset in this Estate. This clawback action was brought to recover funds fraudulently conveyed to certain feeders/net winners in the amount of twelve million dollars ($12,000,000) in the aggregate, with various defendants being liable for portions thereof. This clawback action is captioned *James Berman, Chapter 7 Trustee v. Michael S. Goldberg, LLC et al., Adv. Pro. No. 10-02082* (Bankr. D. Conn.) (the "2082 Clawback Action"). The Trustee commenced the 2082 Clawback Action as quickly as possible – within four months of Z&Z's retention – in May of 2010. The 2082 Clawback Action sought the recovery of intentionally fraudulent and preferential transfers received by the named defendants from the Goldberg Scheme including transfers received by and from certain "Feeders" to the Goldberg Scheme who subsequently transferred portions of their Ponzi scheme pay-outs to their own "sub-investors" who they brought into the Goldberg Scheme. As initially commenced in May of 2010, the 2082 Clawback Action did not include Scott A. LaBonte ("SAL") as a defendant.

9. Based upon early discovery, on October 21, 2010, the Trustee filed a Motion in the 2082 Clawback Action to (1) cite in additional defendants and (2) amend the complaint to include claims against, *inter alia*, SAL, and several of his, his business associates', and his family members' owned and controlled real estate investment entities. The Court granted the Trustee's motion on November 2, 2010. (*See* 2082 Clawback Action, D.I. 84), and on November 12, 2010, the Trustee filed the Amended Complaint (the "Amended 2082 Complaint") in the 2028 Clawback Action adding SAL and these related limited liability company defendants. (*See* 2082 Amended Clawback Complaint, D.I. 94)

10. As the Trustee would later learn, on June 2, 2010, less than a month the Trustee served the 2082 Clawback Action on SAL's first cousin, Malley, SAL held a meeting (the

4

"Trustee Obstruction Meeting") with his business partner/father Roland G. LaBonte ("RGL"), the LaBonte family's decades-long trusts and estates/wealth management attorney, Cummings & Lockwood, LLC partner Paul Bourdeau ("Attorney Bourdeau"), and the LaBonte family's decades-long accountant and CohnReznick, LLC member, Joseph Sparveri ("J. Sparveri, CPA"). The Trustee Obstruction Meeting was conducted at the offices of the LaBonte Family Real Estate Business's ("LFREB") property management company, Devcon Enterprises, Inc. ("Devcon"). The purpose of the Trustee Obstruction Meeting was to strategize, devise and initiate a scheme to make SAL judgment-proof from the Trustee, while continuing SAL's uninterrupted and unfettered control over, access to and enjoyment of all those assets, including controlling and using their cash-flow, thereby insulating SAL and the LFREB entities from the Trustee, while at the same time allowing SAL to conduct "business as usual."

11.    Attorney Bourdeau and J. Sparveri, CPA have known each other for decades, attended high school together, and between them have created and overseen many dynasty and other wealth management trusts, including the LaBonte Family Dynasty Trust (which was settled by RGL), the Scott A. LaBonte Dynasty Trust (the "SALDT," settled by SAL), SAL's mother Marilyn P. LaBonte's ("MPL") revocable trusts, and trusts settled by, or for, the approximately forty (40) other clients the two professionals jointly represented over the years, *some of whom were introduced to these wealth management/tax accounting professionals by SAL.* In addition to being Attorney Bourdeau's personal friend and professional associate, J. Sparveri, CPA has been the accountant for the LFREB and its related entities, as well as for individual LaBonte family members and outside investors/members in LFREB-related entities for more than 35 years. J. Sparveri, CPA also served as the SALDT's only "independent" (purportedly non-

insider) trustee for many years, and served in a similar role for many of the dynasty trusts he and Attorney Bourdeau set up and oversaw together.

12. As discussed in <u>Exhibit A</u>, J. Sparveri, CPA (and his wife) also invested along with RGL and other LaBonte family members and certain LFREB co-investors in the now infamous Rothstein Ponzi scheme. J. Sparveri, CPA and his wife, were also joint plaintiffs with RGL and MPL in a civil RICO action *filed on the same day as the Trustee Obstruction Meeting*, seeking millions of dollars they lost in the Rothstein Ponzi scheme. This fact speaks to the LaBontes' and their professionals' significant familiarity with and previous investments in various Ponzi schemes and civil RICO. It also underscores their seeming absence of any sense of equity and fair play.

13. The scheme initially planned at the Trustee Obstruction Meeting (if not sooner) ultimately evolved to include various LaBonte family members and LFREB associates, including SAL, RGL, J. Sparveri, CPA, Attorney Bourdeau, Sally LaBonte, Marilyn LaBonte, SAL's attorney Lawrence R. Marks ("Marks"), Marks' law firm Juliano & Marks, LLC ("J&M"), SAL and RGL's longtime business partner Robert Landino ("Landino"), and possibly other as yet unidentified defendants, all of whom are collectively referred to herein as the "Putative RICO Defendants."

14. After amending the complaint to add SAL and certain SAL-insider entities as additional defendants to the 2082 Clawback Action, Z&Z prepared the case for trial as quickly as was reasonably possible. The 2082 Clawback action was tried before the Bankruptcy Court (the Hon. Albert Dabrowski, J., Ret.) over 5 days in June of 2011. It was fully briefed and submitted for decision in November of 2011.

C.  **The Putative RICO Defendants' Obstruction of the Trustee and Receiver Continues While the 2082 Clawback Action is *Sub Judice***

15. After the 2082 Clawback Action trial and while the Bankruptcy Court was: (1) analyzing thousands of pages of deposition transcripts and trial testimony in the Record; (2) examining scores of exhibits introduced into evidence; (3) determining the liability of the defendants alleged to owe the Trustee collectively over $12 million; and (4) ultimately drafting over ninety-six (96) pages of Proposed Findings of Fact and Conclusions of Law ("Proposed Findings")[2] to be docketed and submitted (along with the entire Record) to the District Court, for the Honorable Alvin W. Thompson's review, SAL, his dominated and controlled real estate entities, his joint-venture and longtime LFREB partner, Landino and his legal and accounting professionals together facilitated the continued obstruction of the Trustee to insulate SAL and the LFREB. They did so by, among other actions, facilitating and/or directly participating in: intentional fraudulent transfers of SAL's and the SALDT's assets as well as SAL's illegal exercise of control over and use and enjoyment of all cash generated by assets he formerly owned and transferred to the SALDT. Many assets were thereafter transferred to Landino and the assets of Devcon were illegally transferred to DEI Property Management, Inc. ("DEIPM"), all as more particularly described in Exhibit A.

16. The Bankruptcy Court entered its Amended Proposed Findings in the 2082 Clawback Action on May 11, 2015. (*See* 2082 Clawback Action, D.I. 726). SAL objected to the Amended Proposed Findings, recycling the same ludicrous factual and legal argument that he made to the Bankruptcy Court.[3] This objection by design caused further delay in the Trustee

---

[2] The Bankruptcy Court subsequently issued its Amended Proposed Findings and Conclusions of Law ("Amended Proposed Findings"), making non-substantive changes to the Proposed Findings.
[3] *I.e.*, that SAL was not liable to the Trustee for any money re received from the Goldberg Scheme though his cousin Malley because he had not intended to invest in the Goldberg Scheme but rather was only lending money to Malley.

obtaining the SAL Judgment by necessitating Judge Thompson's adjudication of the objection in addition his *de novo* review of the Amended Proposed Findings.

17. On September 27, 2017, the United States District Court for the District of Connecticut (Thompson, *J.*) adopted, virtually in *toto*, the Bankruptcy Court's Amended Proposed Findings and entered judgment (D.I. 815) (the "Judgment") in favor of the Trustee for approximately twelve million dollars ($12,000,000) against, *inter alia*, SAL in the amount of $7,241,797.52 (the "SAL Judgment") and also certain of his family owned and/or managed commercial real estate entities in various other amounts, all with prejudgment interest of 3.25% commencing on November 12, 2010.

18. The vast majority of the Judgment and the SAL Judgment remains unpaid today. The present amount owed by SAL with post-judgment interest is $8,861,606.72, as of July 15, 2019.[4]

19. To preserve and protect the Estate's ability to collect on the Judgment the Trustee believed would eventually enter against SAL and his entities, the Trustee was forced by the actions of the Putative RICO Defendants to commence three additional adversary proceedings *prior to the entry of the Judgment in 2017*.

20. The Trustee commenced the first such prophylactic action, *Berman, Trustee v. Sally LaBonte, et al.*, Case No. Civ 3:15-cv-01687 (AWT) (the "Dynasty Trust Action"), on May 30, 2014, as adversary proceeding no. 14-02026.[5] In consultation with the Estate's largest creditors, the Trustee waited until very close to the expiration of the statute of limitations on the Dynasty Trust Action in the hope of obtaining a decision on the 2082 Clawback Action, before

---

[4] This amount does not take into account the settlement with Richard Polidori, which includes a payment of $88,584.40 to the Trustee. This settlement was approved by the Court on July 16, 2019.
[5] The reference was withdrawn and this action was transferred to the District Court (Thompson, J.) by order dated September 26, 2016.

expending further Estate resources, and thereby knowing with certainty that there would be a judgment against SAL to enforce for the Estate's benefit.

21. The Trustee next commenced an action in May of 2016 captioned *Berman, Trustee v. Landino et al.*, Adv. Pro. No. 16-02042 (the "Landino Adversary") to avoid and recover the intentional fraudulent transfers by SAL of certain of his dominated and controlled entities to Landino and to Landino-solely-owned entities. This action was prompted in large part by the Trustee's discovery that SAL was essentially liquidating and winding-up all the LFREB's investment LLCs (his personal interest in which he had fraudulently conveyed to the SALDT in 2010). SAL accomplished this by fraudulently transferring these entities' joint venture interests (their only valuable asset) to these entities' joint venture partner, longtime LFREB associate and friend, Landino. SAL accomplished this through his domination and control of the SALDT from 2010 to the present. By 2016, the Trustee had also learned that Landino and his attorney knew at the time (2012) that they were buying these assets from SAL and/or the SALDT, that SAL had already intentionally made himself insolvent and potentially judgment-proof from the Trustee. In a *verified complaint* filed against SAL in May of 2012, just weeks before signing the first of two settlement agreements with SAL providing for Landino's purchase of certain LFREB LLC's interests in the Landino/SAL joint venture entities, Landino stated: (1) "a pre-judgment remedy in the amount of $5 million… was entered against [SAL] in the [2082 Clawback Action];" (2) SAL had been since April 2011 "transferring his assets to friends, family and trusts;" and, (3) that SAL's previous conduct had resulted in the denuding of "all or nearly all of [SAL's] assets and [SAL] currently holds little or no assets in his own name."

22. Lastly, in June 2017, the Trustee commenced an action captioned *Berman, Trustee v. DEI Property Management, et al.*, Adv. Pro. No. 17-02029 (the "DEIPM Adversary"

and collectively with the Dynasty Trust Action and the Landino Adversary, the "LaBonte Serial Fraud Actions"), seeking to avoid and recover yet another intentional fraudulent transfer engineered and/or facilitated by some or all of the Putative RICO Defendants. (*See* Exhibit A, at pp. 10-12 (describing DEIPM transaction).)

23.    The Trustee was forced to commence the LaBonte Serial Fraud Actions because SAL not only refused to pay the SAL Judgment, he continued, with the help of the Putative RICO Defendants, to take illegal actions to obstruct the Trustee which have ultimately resulted in the illiquidity of this Estate. Indeed, SAL's father RGL admitted under oath that the fraudulent transfers of Devcon's assets to DEIPM were undertaken in direct response to the Trustee's efforts to attach the assets of Devcon to secure the SAL Judgment.[6]

24.    The Trustee has now pursued and continued to prosecute these serial fraudulent transfers to the point of irrationality. The above-described actions taken by the Putative RICO Defendants to render SAL judgment proof have succeeded. The continued pursuit of the LaBonte Serial Fraud Actions has been rendered futile and the Estate can no longer pay for it.

25.    Thus, the Trustee's almost ten (10) year pursuit of assets to distribute to Creditor/Victims has been significantly obstructed by the Putative RICO Defendants' efforts to protect SAL and the LFREB and to render the Estate illiquid so the Trustee would therefore be incapable of pursuing the RICO Action. Such conduct, if left unaddressed, makes a mockery of our judicial system and encourages future defendants to engage in asset transfer shell games and other illegal conduct to avoid ever paying judgments.

26.    The Trustee, his undersigned counsel, the estate's largest creditors, and representatives of the criminal enforcement arm of the federal government do not want to see

---

[6] For a more complete discussion of the outrageous conduct of SAL and the Putative RICO Defendants, see pages 8 through 12 of the Trustee's Status Report, attached hereto as Exhibit A.

that happen. However, the only remaining avenue to provide a further meaningful distribution to the Creditor/Victims of the Estate and the Criminal Receivership is the prosecution of the RICO Action against the Putative RICO Defendants on a contingency fee (and potentially attorney expense-advancing) basis, because the illegal and obstructive actions of the Putative RICO Defendants have made the prosecution of the RICO Action (or any other action), on a traditional retainer/hourly basis, impossible.[7]

27. The Trustee has therefore requested that Z&Z prosecute the RICO Action against the Putative RICO Defendants on a modified "lesser than" contingency basis assuming certain pre-conditions are allowed by this Court.

**D. Z&Z's Proposed Retention for the RICO Action**

28. Following substantial consultations with the Trustee and the above-described stakeholders, Z&Z has agreed to prosecute the RICO Action and, if necessary, to advance Court-approved reasonable and necessary expenses in connection therewith, on the following terms and conditions:

  a. The Trustee irrevocably waives any and all compensation in the form of commissions under 11 U.S.C. § 326 on any distributions made in this case except as described in the "Success Fee" below;

  b. As directed by the Trustee, Z&Z will zealously prosecute the RICO Action (and potentially related claims) against the Putative RICO Defendants (and

---

[7] The Estate presently holds $2,041,448.46, and there are pending applications for compensation totaling $1,942,179.28. In addition, Z&Z is owed $825,255.46 in previously allowed, but held back compensation (the "Hold Back"). The Trustee believes that there will be additional funds coming in to the Estate as a result of certain pending matters, one of which has been settled, but the expected additional funds will be insufficient to pay the allowed Hold Back, pay for the prosecution of the RICO action on an hourly basis, and fund the anticipated expenses for the prosecution of the RICO Action.

11

any other defendants the Trustee deems culpable) to recover damages under any and all applicable law, including 18 U.S.C. § 1961, *et seq.*;

c. The Trustee will pay the expenses of the RICO Action from the Estate's general fund, subject to the prior approval thereof by this Court. If the Estate does not have sufficient funds to pay for any court-approved expenses of the RICO Action, Z&Z will advance such expenses for the Estate, or make satisfactory arrangements with undisclosed experts, disclosed experts, and/or other professionals and litigation-related administrative creditors retained to assist the Trustee, all subject to the ultimate approval of this Court;

d. Z&Z will be compensated on a modified contingency fee basis for its prosecution of the RICO Action (and any associated) actions at the trial and appellate level, receiving as compensation one-third (1/3) of the net recovery obtained from such actions, or one and one-half (1½) times Z&Z's normal hourly rates, *whichever is less* (the "Lesser Of Fee Structure") subject to the following potential Success Fee as hereafter defined:

   i. In the event that the Trustee distributes, after appropriate order of this Court, sufficient funds to pay one hundred percent (100%) on allowed claims, Z&Z shall be entitled to a "Success Fee" as follows: (1) the difference between the Lesser Of Fee Structure and thirty-three percent (33%) of the net recovery from the RICO Action; and (2) if there remain funds after the payment in (1) above, the Trustee will be entitled to receive the maximum allowable commission permissible

   under 11 U.S.C. § 326 on all distributions made in this case, *excluding from such commission calculation distributions to Z&Z.*

e. If funds remain in the Estate after payment Success Fee, after notice and a hearing, Creditor/Victims will receive a special distribution of interest from the Petition Date on their allowed claims, determined at an appropriate rate set by this Court;

f. Z&Z's pending Seventh Interim Fee Application is approved, without any hold-backs, to an extent satisfactory to Z&Z in its sole discretion and Z&Z has received full payment of all such court-approved fees and reimbursement of expenses as set forth in the Seventh Interim Fee Application;

g. The Trustee shall be entitled, from time to time, to pay Z&Z portions of its existing Hold Back up to its full amount of $825,255.46, from funds received from any source into the Estate upon thirty (30) days' notice to the Court, the United States Trustee, and all parties in interest, and no objection having been filed thereto. In the event such objection is filed, the Court will determine whether grounds other than the historical policy for hold-backs generally exist in determining whether or not to allow such payment, the gravamen for such payment being that Z&Z would otherwise be seeking such Hold Back now in return for, *inter alia*, handling the RICO Action on a lesser-of contingency fee basis but for the illiquidity imposed on Estate by the Putative RICO Defendants;

h. Any recoveries from the RICO Action shall be distributed as follows, and in the following order, after notice, hearing, and approval of this Court:


  i. Any unreimbursed administrative expenses of the RICO Action other than Z&Z expenses, if any;

  ii. Reimbursement of unreimbursed administrative expenses advanced by Z&Z in connection with the prosecution of the RICO Action, if any;

  iii. Payment of the remainder of the Hold Back, if any;

  iv. Z&Z's professional fees as described above including the Success Fee, if any; and,

  v. The remainder to the Estate for distribution to Creditor/Victims as order by this Court.

i. Nothing herein shall affect or alter the terms of Z&Z's retention as general counsel as previously ordered by this Court in connection with all matters not within the ambit of the RICO Action; and,

j. Unless and except as otherwise provided above, all compensation paid to professionals shall continue to be subject to this Court's oversight and approval.

29. Z&Z respectfully submits that it is agreeing to assume a substantial risk in prosecuting the RICO Action on the terms and conditions set forth above and that very few if any other experienced bankruptcy and litigation law firms would agree to prosecute a complex litigation on remotely similar terms.

30. Z&Z has informed the Trustee that it is willing to take this risk, on the terms and conditions set forth above, because it believes strongly in the merits of the RICO Action and that the Putative RICO Defendants should be held to account for their illegal and reprehensible conduct.

Dated this 22nd day July, 2019, at Bridgeport, Connecticut.

                                JAMES BERMAN, CHAPTER 7 TRUSTEE FOR THE ESTATES OF MICHAEL S. GOLDBERG, L.L.C. AND MICHAEL S. GOLDBERG

By: */s/ Jed Horwitt*
      Jed Horwitt (ct04778)
      James Moriarty (ct21876)
      John L. Cesaroni (ct29309)
      Christopher H. Blau (ct30120)
      Zeisler & Zeisler, P.C.
      10 Middle Street, 15th Floor
      Bridgeport, CT 06604
      Tel. 203-368-4234
      Fax 203-367-9678
      Email: jhorwitt@zeislaw.com

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

---------------------------------------------------------X
                                                      :     Chapter 7

In re:                                          :

                                                     :     Substantively Consolidated
MICHAEL S. GOLDBERG, LLC         :     Lead Case No. 09-23370 (JAM)
MICHAEL S. GOLDBERG              :     Member Case No. 09-23371 (JAM)
                                                     :

        Debtors.                      :
                                                   :
---------------------------------------------------------X

## CERTIFICATE OF SERVICE

      I, Jed Horwitt, hereby certify that on the 22nd day of July, 2019, the foregoing Motion Pursuant to 11 U.S.C. Sections 327, 328, and 105 to Amend Zeisler & Zeisler, P.C.'s General Counsel Retention to Include Prosecuting a Racketeer Influence and Corrupt Organization ("RICO") Civil Action Against Various Defendants on a Special "Lesser Of" Contingency Fee Arrangement with a Potential Additional Success Fee with All Such Compensation Subject to Final Court Approval Under 11 U.S.C. Section 330 Notwithstanding Section 328(a) was by e-mail to all appearing parties by operation of the Court's electronic filing system.

                                                               JAMES BERMAN, CHAPTER 7 TRUSTEE FOR
                                                               THE ESTATES OF MICHAEL S. GOLDBERG,
                                                               L.L.C. AND MICHAEL S. GOLDBERG

                           By:   */s/ Jed Horwitt*
                                   Jed Horwitt (ct04778)
                                   James Moriarty (ct21876)
                                   John L. Cesaroni (ct29309)
                                   Christopher H. Blau (ct30120)
                                   Zeisler & Zeisler, P.C.
                                   10 Middle Street, 15th Floor
                                   Bridgeport, CT 06604
                                   Tel. 203-368-4234
                                   Fax 203-367-9678
                                   Email: jhorwitt@zeislaw.com