**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | |
|---|---|
| **In re** | **Chapter 7** |
| **MICHAEL S. GOLDBERG, LLC** | **Case No. 09-23370 (JAM)** |
| and **MICHAEL S. GOLDBERG,** | **Case No. 09-23371 (JAM)** |
| Debtors | (Substantively Consolidated) |

**UNITED STATES TRUSTEE'S OMNIBUS STATEMENT CONCERNING THE SEVENTH INTERIM APPLICATION FOR COMPENSATION, APPLICATION TO AMEND ZEISLER & ZEISLER, P.C.'S GENERAL COUNSEL RETENTION, AND TRUSTEE BERMAN'S JULY 3, 2019 CHAPTER 7 STATUS REPORT**

William K. Harrington, the United States Trustee for Region 2 ("United States Trustee"), in furtherance of his duties and responsibilities set forth in 28 U.S.C. § 586(a)(3)(B) and (G), respectfully files this Statement concerning the Seventh Interim Application for Compensation and Reimbursement of Expenses (ECF 1710) ("Fee Application") and Trustee's Application to Amend Zeisler & Zeisler, P.C.'s General Counsel Retention (ECF 1732) ("RICO Application"), and Trustee Berman's July 3, 2019 Chapter 7 Status Report ("Status Report"). In support of his statement, the United States Trustee, through his undersigned counsel states:

**I.    FACTS**

1.    Involuntary Chapter 7 petitions were filed against Michael S. Goldberg, LLC (09-23370) and Michael S. Goldberg (09-23371) on September 18, 2009. *See* ECF 1 in each case. Orders for Relief in each case was entered by the Bankruptcy Court on November 24, 2009. ECF 6 and 5, respectively. Creditors in both cases chose to elect a Chapter 7 trustee instead of accepting the interim Chapter 7 trustee appointed from the District of Connecticut Chapter 7

1

trustee panel.   On January 12, 2010, following his election by creditors, James Berman, Esq. was appointed as Chapter 7 trustee of both of the Debtors' cases. ECF 38 and 36, respectively.

2. Chapter 7 trustee James Berman, Esq. ("Trustee Berman") filed his application to employ his law firm Zeisler & Zeisler, P.C. ("Zeisler") or ("Applicant") on January 14, 2010 (ECF 43) to act as his general counsel.   After a hearing on the Application to Employ Zeisler, on January 22, 2010, the Bankruptcy Court entered an order approving the retention of the Zeisler firm on an hourly fee basis (ECF 48).

3. On October 5, 2012, following a hearing, the Bankruptcy Court entered an order substantively consolidated the bankruptcy estates of the two Debtors. ECF 1018 and 193, respectively.   On November 7, 2012, Trustee Berman, at the request of the United States Trustee, filed a motion to make an interim distribution from monies collected early in the administration of the now-consolidated Debtors' bankruptcy estates. ECF 1038.   On November 16, 2012, the Bankruptcy Court granted Trustee Berman's interim distribution motion. ECF 1044.   That interim distribution totaled $8,354,651.01 or 27.5 percent of then allowed claims.

4. No further interim distributions have been made by Trustee Berman.

5. By the end of calendar year 2012, the Zeisler firm was allowed interim compensation totaling $4,701,794.23 and reimbursements totaling $283,731.00 in its first three interim compensation and reimbursement of expenses applications.   ECF 336, 695, 1058, and 1075.

6. Zeisler's next three *post-interim-distribution* interim applications for compensation and expenses were allowed totaling $3,550,760.30 in compensation and $82,975.84 in reimbursement of expenses. ECF 1288, 1395, and 1488.

2

7. As a result of the first six interim applications for compensation and reimbursement of expenses by Zeisler, the Bankruptcy Court has allowed a total of $8,252,554.53 in compensation and $366,706.84 in reimbursement of expenses. Of the total previously allowed sums, $7,427,299.07 compensation and $366,706.84 in reimbursements have been paid to Zeisler with a holdback on compensation of $825,255.46 still remaining unpaid to Zeisler.

8. Zeisler's current Fee Application is its seventh interim request. The Fee Application seeks compensation in the amount of $1,646,930.50 and reimbursement of expenses of $49,945.39. The period covered by the Fee Application runs from September 1, 2017 through June 30, 2019.

9. As of July 3, 2019, Trustee Berman is holding $2,041,448.46 in the consolidated bankruptcy estates' DIP account(s). ECF 1709, page 15. Besides Zeisler's Seventh Interim Fee Application, six other of Trustee Berman's professionals are seeking fee applications presently in a total amount of $245,248.78. *Id.*

10. Taking into account the Zeisler Seventh Interim Application, the pending applications of Trustee Berman's six other professionals and the compensation holdback for Zeisler's already allowed compensation, there is no less than $2,767,434.74 in allowed or accrued administrative expense claims chasing the $2,041,448.46 which Trustee Berman has on hand.

11. Trustee Berman's July 3, 2019 Chapter 7 Status Report states that he has collected a total of $19,213,869.82. ECF 1709, page 5. Of that amount, $8,354,651.01 was distributed to creditors leaving $10,859,218.80. Of that remaining non-dividend $10,859,218.80, at least $11,564,189.13 has either been paid, allowed or accrued to the benefit of Trustee Berman's professionals which administrative expenses thus far represents approximately sixty (60) percent

of the monies collected by Trustee Berman.

12. The fourth, fifth, sixth and seventh Zeisler fee applications were either allowed in the case of the first three applications or have been requested in current application in a total amount of $5,197,690.80 and, according to Trustee Berman's Status Report, is attributable to investigating and obtaining judgments against various parties especially including the LaBronte defendants ("LaBronte defendants") against whom Trustee Berman's collection efforts have been largely unsuccessful thus far.

13. In light of the failure of the consolidated bankruptcy estates to make collections against the LaBronte defendants after prolonged litigation costing in the millions of dollars thus far, Trustee Berman requests that the Bankruptcy Court amend the hourly-fee retention agreement of the Zeisler firm to a novated one under which, in addition to the millions of dollars already spent obtaining judgements against the LaBronte defendants with more still accruing on an hourly fee basis, the Zeisler firm will agree to file a Racketeer Influenced and Corrupt Organization Act ("RICO") civil case against the LaBronte defendants against whom Trustee Berman has already obtained judgments and certain other transferees of the assets of the LaBronte defendants and shall take an additional one-third of any recovery obtained through the RICO suit. ECF 1732.

14. As part of the Application to Amend the Zeisler Retention, Trustee Berman has offered, under certain circumstances, to waive his Chapter 7 trustee's commission, which on nearly twenty million dollars of disbursements is approaching $600,000.00, should the RICO litigation not allow the consolidated bankruptcy estates' creditors to be paid one hundred percent of their allowed claims.

15. Trustee Berman's waiver of his Chapter 7 trustee commission would not take effect

should he be successful in the RICO litigation by collecting sufficient monies to allow for a one hundred percent distribution to creditors.   In such a case, Trustee Berman would be entitled to his commission based on disbursements going to all creditors and professionals *with the exception of fees and reimbursements paid to Zeisler*. ECF 1732, pages 12 and 13.

16.     The Zeisler firm's retention for the RICO litigation is to be on a contingency fee basis of either $1/3^{rd}$ of monies collected or one hundred fifty (150) percent of its normal hourly fees, *whichever is less*. ECF 1732, page 12.   That modified contingency fee arrangement is often favored for insuring that a "normal" contingency fee of one-third is not abusive to the bankruptcy estate should litigation be successfully completed soon after it is commenced and is utilized primarily by a Chapter 7 trustee when his own law firm is retained.   The modified contingency fee retention would be further modified by paying the Zeisler firm the full one-third contingency fee, of the "less than" provision should collections from the RICO litigation allow Trustee Berman to pay one hundred percent of allowed claims. *Id.*

17.     The Zeisler amended retention to pursue the RICO litigation seems to be dependent upon the Bankruptcy Court allowing, in toto, Zeisler's current Fee Application without the usual holdback of 10 percent (ECF 1732, page 13, at (f)) and that Trustee Berman be given the discretion to pay the Zeisler firm its allowed $825,255.46 from estate funds received from any source. *Id.* at (g).

18.     It also appears that the Zeisler firm would remain as the general counsel of Trustee Berman in terms of any services not part of the RICO litigation continuing its almost decade-long hourly-fee arrangement. ECF 1732, page 14 at (i).

**COMMENTS**

**Fee Application:**

19.     The Zeisler Fee Application is organized appropriately with the vast majority of time devoted to the litigation and investigation ($1,223,673.00) and "post crime fraud settlement efforts ($361,640.55).

20.     The filing of Trustee Berman's July 3, 2019 Status Report along with the Fee Application certainly paints a picture of the Zeisler firm and Trustee Berman having to deal with deceit, attorney and accountant malfeasance, fraud and obfuscation when dealing with the LaBronte defendants over a several-years-long period of time.

21.     The pursuit of the LaBronte defendants and the obtaining of the District Court rulings which allowed Trustee Berman to finally ferret out the evidence underlying the proposed RICO litigation makes up the bulk of the litigation entries in the Fee Application.

22.     The United States Trustee is well-aware of the size of the Fee Application and has reviewed it for both form and substance looking for inflated time-entries, unnecessary services or research, duplicative services and excessive intra-office communications.   With no notable exceptions, the time-entries identified the person providing the services, the time spent providing each service and the charge for such service, were clear, described adequately the services performed and were organized as to demonstrate how those services were related to other similar services being performed more or less contemporaneously, and provided a break-down of the time allotted to each service for time-entries over one-half hour.

23.     Trustee Berman's Status Report and Motion to Amend Retention were also helpful in putting context to the time-entries contained in the Fee Application in light of the formidable

obstacles placed in the way of Trustee Berman's efforts collect the consolidated estates' assets.

24.  The United States Trustee review of the Fee Application determined that, on an interim compensation basis, the services charged for seemed to have actually been performed, were necessary at the time performed, and that the amount charged by the Applicant was reasonable given the circumstances of the case and the provisions of the Bankruptcy Court-approved retention of the Zeisler firm.

25.  As with his statements concerning prior Zeisler Fee Applications, the United States Trustee is very concerned about the majority of the monies being collected (some 60% thus far) by the Trustee being either paid, allowed but held back, or accrued by his professionals.  It appears that the Debtors' consolidated bankruptcy estates are or are going to be rendered administratively insolvent and left without enough funds to either pay all its currently professional applications being considered or have a reserve of funds in order to undertake the proposed RICO litigation.

26.  As Zeisler has already been allowed over eight million dollars in compensation including $825,255.46 being allowed but held back pending further order of the Bankruptcy, the United States Trustee urges the Court to consider, once allowed after hearing, the payment of Trustee Berman's other professionals to have priority over the payment of allowed compensation to the Zeisler firm should the allowance of professional fees exceed the consolidated bankruptcy estate's ability to pay the allowed compensation to professionals.

27.  In addition, the consolidated bankruptcy estates should not be left penniless by the payments to its professionals.  The bankruptcy estates need to maintain a cash balance that will allow them to proceed to the next stage of litigation without "silently borrowing" funds from either the Zeisler firm or Trustee Berman for the costs of discovery or other professionals.

28.     The United States Trustee reserves all rights to object to the Zeisler firm's compensation at the time of its final application.

**Status Report**

29.     The United States Trustee can certainly say that Trustee Berman has spared no expense in the administration of the consolidated cases.  Trustee Berman had considerable success in the first two years of his tenure being about to collect and distribute more than twelve (12) million dollars to creditors and his professionals in a ratio of approximately 2 to 1 ($8,354,651.01/creditors to $4,701,794.23/professionals).  Unfortunately, after 2012, the estates' remaining approximately seven million dollars have been or will shortly be distributed exclusively to Trustee Berman's professionals and primarily to his law firm Zeisler & Zeisler, P.C.

30.     At present, the consolidated bankruptcy estates appear to be administratively insolvent given the $2,041,448.46 on hand versus the administrative allowed but unpaid expense of $825,255.46 owing to the Zeisler firm and the accrued but not yet allowed administrative expense claims of $1,942,179.28 to seven professionals which total $2,767,434.74.  These figures do not include Trustee Berman's potential administrative claim for a Chapter 7 trustee commission which approximates $600,000.00 given the disbursements to date.

31.     Trustee Berman's July 3, 2019 Status Report is largely silent as to the thought process of the trustee as it developed over the many years of the LaBronte defendants litigation concerning the likelihood of collecting on judgments, once obtained, against those defendants. For the United States Trustee, unanswered questions remain:  when did Trustee Berman and the Zeisler firm realize that those judgments were going to be uncollectable, as is presently admitted? How many years of litigation and expense should be considered "unproductive" due to the

LaBronte defendants "staying one step ahead" of the consolidated estates' collection actions? Why weren't the additional putative RICO defendants brought into the litigation arena earlier and the RICO counts brought as part of the earlier litigation?

32.   Those questions and more will likely have to be answered prior to the application for final compensation in order for the Bankruptcy Court to determine whether or not all of the formidable expenses paid to professionals in this case were necessary at the time those services were performed.

**Motion to Amend Retention**

33.   Trustee Berman's Motion to Amend the Zeisler Retention Agreement seeks a contingency fee engagement after almost a decade of paying Zeisler an hourly fee for pressing collection actions.   Had contingency fee retentions been the norm for the consolidated bankruptcy estates, the nineteen million dollars in collections would have generated no more than $6,410.413.19 in legal fees plus reimbursement of expenses and whatever incidental legal services would have been performed for Trustee Berman outside of the collection litigation arena.   This comparison is not meant to be a criticism but to provide some perspective into the comparison of costs between a contingency fee arrangement and the actual costs of the administration of the consolidated bankruptcy estates upon the choice of Trustee Berman to engage his law firm using the hourly-fee payment arrangement in place since the beginning of his trusteeship.

34.    The United States Trustee is concerned whether the proposed RICO litigation is going to have any more success than did the LaBronte defendants litigation which obtained seemingly uncollectable judgments.   After nearly a decade of administration and with the proposed RICO litigation as the only significant asset left, are the chances of recovery sufficient to

9

continue the administration for several more years in the hope of that recovery. This is a question a Chapter 7 trustee must consider and answer for the Bankruptcy Court.

      35.      The United States Trustee is also concerned that those who legitimately owe debts to a Chapter 7 bankruptcy estate are encouraged to cooperate with a Chapter 7 trustee's collection efforts to the extent possible. With the findings of the District Court in the LaBronte defendants' litigation, it is clear that the putative RICO defendants have taken uncooperativeness with the Chapter 7 trustee to an extreme level. Wrongdoers should not profit from their illicit acts. Therefore, the United States Trustee is in favor of Trustee Berman bringing the RICO action or such other litigation which will bring wrongdoers to the bar of justice in a meaningful way.

      36.      The United States Trustee notes that Trustee Berman's Motion to Amend Retention seems to demand certain conditions precedent to the Zeisler firm accepting the retention to prosecute the RICO litigation including a condition that the Bankruptcy Court approve the Zeisler Fee Application, without a holdback provision, in an such amount that the Zeisler firm, in its sole discretion, finds acceptable and that the Zeisler firm is paid that full amount. ECF 1732, page 13 at (f).

      37.      The United States Trustee finds this provision unacceptable as it appears to hold the compensation approval process hostage to the discretion of the Zeisler firm. Either, the Zeisler firm should take the assignment without conditions or Trustee Berman should find some other law firm to take the assignment. Nowhere in the Motion to Amend Retention does Trustee Berman discuss alternatives to the hiring of the Zeisler firm to bring the RICO action. Are there no other alternatives being considered by the trustee? Is there no other competent law firm which would take the RICO case for a one-third contingency fee? If the proposed RICO litigation is not

illusory, there should be any number of alternative law firms from which Trustee Berman could choose utilizing a contingency fee given the size of potential recoveries and the existing findings by the District Court in the earlier LaBronte collection litigation. That is a far better result than having the Zeisler firm dictating conditions to the Bankruptcy Court under which it may not take on the RICO litigation unless it is satisfied with the allowance and payment of its current Seventh Interim Fee Application.

38. The United States Trustee also objects to the Motion to Amend Retention's provision that gives Trustee Berman the sole discretion to pay the Zeisler firm the already allowed holdback from any funds coming into the consolidated bankruptcy estates. ECF 1732, page 13 at (g). Such a provision makes a mockery of the proposed contingency fee arrangement by potentially allowing all of a recovery from the RICO litigation to be paid entirely to the Zeisler firm, based upon its earlier *interim* allowance holdbacks instead of its modified one-third contingency without further consideration of the Bankruptcy Court. In an administratively insolvent bankruptcy estate, the Bankruptcy Court cannot give up its discretion to insure that the priorities of the Bankruptcy Code are managed fairly. There is no reason that the Zeisler firm should receive more than its statutory *pro rata* share of an administratively insolvent bankruptcy estate. This is especially true where the trustee is a senior member of that firm demanding such potentially unequal treatment.

39. Further, the United States Trustee objects to Trustee Berman and the Zeisler firm dictating how any possible proceeds of the proposed RICO litigation should be distributed in advance of the Bankruptcy Court making that determination after such proceeds are brought into the consolidated bankruptcy estates. ECF 1732, pages 13 and 14 at (h).

40.     If the Zeisler firm is not willing to walk back its unreasonable demands, especially in light of having collected more in compensation than has been distributed to creditors, it should not take on the representation of the proposed RICO litigation and should consider resigning from the representation of the consolidated bankruptcy estates if it no longer wishes to represent the consolidated bankruptcy estates on normal *non-dictated* terms.

41.     If Trustee Berman believes that the Zeisler firm is the only law firm capable of prosecuting the proposed RICO litigation, Trustee Berman should reconsider his decision to bring that litigation unless he can demonstrate to the Bankruptcy Court that there is no competent law firm, with the exception of his own, which can prosecute the proposed RICO litigation or that no other competent law firm would possibly take on that litigation for the consolidated bankruptcy estates for a straight one-third contingency basis as compensation and the reimbursement of expenses.

WHEREFORE, the United States Trustee respectfully requests that the Bankruptcy Court consider the comments of the United States and grant or deny such relief as is appropriate and just.

Dated: July 29, 2019          Respectfully submitted,
New Haven, Connecticut

                                      WILLIAM K. HARRINGTON
                                      UNITED STATES TRUSTEE FOR REGION 2

                      By:     /s/ Steven E. Mackey
                            Steven E. Mackey/ct09932
                            Trial Attorney
                            Office of the United States Trustee
                            Giaimo Federal Building, Room 302
                            150 Court Street
                            New Haven, CT 06510
                            (203) 773-2210